**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**

------------------------------------------------------------------------x

DERRICK GRAYS,                                          Case No.:  1:24cv217-GHD-DAS

                                    Plaintiffs,

                    -against-                            **VERIFIED COMPLAINT**

UNITED PARCEL SERVICE, INC., INTERNATIONAL              **PLAINTIFF DEMANDS**
BROTHERHOOD OF TEAMSTERS LOCAL 891,                     **A TRIAL BY JURY**

                                    Defendant.

------------------------------------------------------------------------x

Plaintiff Derrick Grays ("Plaintiff") by their attorneys White, Rose & Hilferty, as and for

his Verified Complaint, hereby alleges the following:


## NATURE OF THE CASE

1.      Plaintiff brings this action alleging that Defendant discriminated against them based

upon their race and age, as well as retaliation, in violation of Title VII of the Civil Rights Act of

1964 ("Title VII"), 42 U.S.C. § 2000 et seq., Civil Rights Act of 1866 42 U.S.C. § 1981 et seq.

("Section 1981"), and the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*. Plaintiff seeks

damages to redress his financial and emotional damages that Defendants' unlawful discriminatory

practices in violation of federal statutes inflicted upon them.


## JURISDICTION & VENUE

2.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000, *et seq.*, and 28 U.S.C.

§§ 1331 and 1343.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial

district in which a substantial part of the events or omissions giving rise to the claims occurred.

1

## PROCEDURAL REQUIREMENTS

4.     On January 23, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, 423-2022-01718 Defendant United Parcel Service, Inc.

5.     On November 27, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, 423-2023-01958 against Defendant United Parcel Service, Inc.

6.     On January 29, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, 423-2023-01745 against Defendant International Brotherhood of Teamsters Local 891.

7.     Plaintiff's formal Charges of Discrimination filed with the EEOC asserted the same factual allegations that are asserted in this Verified Complaint.

8.     On September 18, 2024, Plaintiff received three Notice of Suit Rights dated September 18, 2024 from the EEOC.

9.     Plaintiff timely and properly commenced this action within 90 days of receipt of the Notice of Suit Rights after exhausting all administrative remedies with the EEOC.


## PARTIES

10.     At all relevant times, Plaintiff was a resident of the State of Mississippi, County of Clay.

11.     Defendant United Parcel Service, Inc. ("UPS" or "Defendant") was a domestic corporation organized pursuant to the laws of the State of Delaware.

12.     At all times relevant, UPS owned, operated, and/or maintained its principal headquarters at 55 Glenlake Parkway, N.E., Atlanta, Georgia 03032.

13.     At all times relevant, UPS owned, operated, and/or maintained a package processing facility in the State of Mississippi, County of Lowndes, City of Columbus ("Columbus facility").

14.     Defendant International Brotherhood of Teamsters Local 891 ("Local 891" or "Defendant") was a domestic labor organization constituted pursuant to the laws of the State of Mississippi.

15.     At all times relevant, Local 891 owned, operated, and/or maintained its principal place of business at 2560 Valley Street, Jackson, Mississippi, 39204.

## RELEVANT FACTS

16.     Plaintiff is a 44-year-old African American male.

17.     On April 19, 2021, UPS hired Plaintiff as a Mechanic First Class at its Columbus facility.

18.     Plaintiff's supervisor for the entirety of his employment with UPS has been UPS Automotive Fleet Supervisor Brett Walters, a Caucasian male. Walters supervised approximately nine Mechanics First Class of varying racial identities, including Caucasian and African American, across multiple facilities.

19.     Within a month of Plaintiff's hiring, Walters took Plaintiff to lunch. Each of them had recently had a birthday. Walters asked Plaintiff's age; Plaintiff replied he had just turned 41. Walters indicated if he had known Plaintiff's age, he would not have hired Plaintiff and instead have hired his boss Timothy Heal's son, an 18-year-old Caucasian male.

20.     Walters perpetuated a racially-discriminatory work environment during Plaintiff's time working for UPS by encouraging racially motivated commentary within the workplace.

21.     Walters would make racially-discriminatory comments and racially-insensitive jokes directed at Plaintiff.   He made very frequent references to "cracking the whip," an allusion to slavery. If Plaintiff would thank Walters for lunch, Walters on at least one occasion said, "You're an investment, get back in the field." Walters and other co-workers would also call Plaintiff "Can't Get Right," the name of a mute African American prisoner character from the 1999 film *Life (*based on 1932 Jim Crow-era film filled with racial overtones). Walters also commented on Plaintiff's taste in football teams by saying that Plaintiff "must be on drugs," another racially motivated offensive statement.

22.     Walters would often target Plaintiff for working on the computer, despite the fact it was related to Plaintiff's job responsibilities. If Plaintiff indicated he was discussing parts ordering and searches with other younger and/or Caucasian mechanics on the phone, such as Rocky, Clay or Stacy Quinn, Walters would relent, considering Plaintiff's work justified because a Caucasian mechanic was on the phone.

23.     Walters similarly indicated a discriminatory animus by making racially motivated negative comments towards other African American workers. Upon information and belief, Walters either terminated or forced the resignation of resign another African American employee, Anthony, for stealing time—the same pretextual reason ultimately used to justify Plaintiff's termination. Walters referred to another African American female employee as "ghetto." When this employee's truck caught fire, Walters commented it was probably all of the fast food or gas station food she ate. Walters had particular venom towards African American employees that he did not exhibit against Caucasian employees.

24.     In June 2021, Walters made "cracking the whip" references to Plaintiff; Plaintiff told Walters not to speak to him that way and walked away.

4

25.     On August 19, 2021, Plaintiff received a written warning for poor workmanship, arising from a leaking seal on one of the tires. However, Mechanic First Class Stacy Quinn evaluated the leak and determined it was not Plaintiff's fault. He went to lengths to correct Walters on Plaintiff's behalf. Walters disregarded the clear evidence and still refused to withdraw the warning. Quinn—a Caucasian—disclosed to Plaintiff that he never received any oral or written reprimands for the exact same malfunctions.

26.     On October 22, 2021, Plaintiff emailed Walters requesting he remove the written warning because it had been proven the issue was not attributable to his work. Walters simply responded Plaintiff would have to wait nine months for the reprimand to expire, wrongfully placing blame on Plaintiff at fault for the vehicle leak.

27.     On November 2, 2021, Walters warned Plaintiff that he was bringing negative attention to himself by confronting Walters and Holiday about the August reprimand.

28.     Walters established a system of harsher consequences for African American employees. For example, Walters represented to Plaintiff and Parson that he would terminate anyone UPS employee who was dishonest. On December 13, 2021, Walters interviewed Plaintiff to investigate a fire damage to a package car. Walters knew that the Caucasian driver of this package vehicle falsely stated that he attempted to use a fire extinguisher to put out the blaze. However, Walters declined to discipline the Caucasian driver.

29.     On January 26, 2022, Walters and Shop Steward Thomas Holliday attempted to suspend Plaintiff for allegedly incorrectly double sealing an oil filter on Holliday's truck. Before delivering the news, Walters made another allusion to slave-whipping: "Brace yourself, this is going to sting a little bit." During this meeting, Plaintiff formally complained that Walters was targeting him because he was African American. He brought the filter to show Walters that the

part itself was faulty, not his work. Walters denied any discrimination. He confiscated the filter, abruptly left the meeting, and did not return to the facility for several months.

30.     The following day, Holliday warned Plaintiff that would be accused of stealing time for trying to get paid for defending his claims of race discrimination.

31.     On January 28, 2022, Caucasian Driver Cole Eller told Plaintiff that Walters did not like Plaintiff because Plaintiff was an educated black man.

32.     Several days later, African American Alternate Shop Steward Tony Henry encountered Plaintiff in the restroom. Henry advised that Walters intended to terminate Plaintiff because he was black. Plaintiff responded he had not been terminated but he raised a race discrimination complaint. Henry pointed to his hand (alluding to his race), and told Plaintiff to be careful.

33.     On February 2, 2022, Plaintiff filed a grievance with Shop Steward Thomas Holliday complaining of harassment based upon race and age discrimination in his workplace, specifying a violation under Article 36 of the Collective Bargaining Agreement, Nondiscrimination. Holliday deterred Plaintiff from including many specific details and from dating the grievance. After Plaintiff realized his copy of the grievance was missing pages, Holliday indicated they would fix it but failed to so. Holliday warned Plaintiff that he would be targeted for termination if he alleged race discrimination. When Plaintiff revealed that he had videoed his work to prove it satisfactory, Holliday warned Plaintiff that UPS would accuse Plaintiff of stealing time if he spent time on the clock working to prove his case for racial discrimination.

34.     Beginning on February 3, 2022 and continuing thereafter, Walters harassed Plaintiff via email about tasks that were supposed to be performed and warned Plaintiff he was

being watched. This increased scrutiny was retaliation for Plaintiff's verbal allegations of race discrimination.

35.     On February 7, 2022, Walters sternly emailed Plaintiff, again in retaliation for his verbal allegations of race discrimination.

36.     On February 9, 2022, Holliday discouraged Plaintiff from alleging claims of racial discrimination. Holliday stated that Local 891 Business Manager Jimmy Pinkard indicated it would be best if disregarded the race discrimination grievance.

37.     Neither Local 891 nor UPS initiated an investigation as a result of Plaintiff's grievance, in violation of both UPS' policies and procedures and the CBA.

38.     On February 18, 2022, Walters retaliated against Plaintiff by locking him out of the timekeeping system to make it appear Plaintiff was five hours late.

39.     On February 24, 2022, Walters again locked Plaintiff out of the timekeeping system in retaliation for his complaint of race discrimination.

40.     On April 26, 2022, a worker for Caucasian male subcontractor Tim Moody physically threatened Plaintiff, requiring Plaintiff to leave the immediate area. The next day Plaintiff reported the incident to Holliday, who disregarded it.

41.     On July 19, 2022, Plaintiff overheard Walters in an agitated state complaining that UPS hired African American Darrell Montgomery rather than promoting his manager, Caucasian Automotive Manager Timothy Heal.

42.     On August 24, 2022, Walters approved Plaintiff's request for a late arrival due to a family emergency. However, Plaintiff learned that Heal went around asking employees where Plaintiff was that day. Heal—who had virtually no prior interaction with Plaintiff—applied this increased scrutiny in direct retaliation to Plaintiff's complaint.

43.     On September 1, 2022, UPS terminated Plaintiff for allegedly stealing time.  No evidence existed to support this termination. Walters attempted to evade responsibility for terminating Plaintiff by falsely assuring him that he would be rehired if he resigned.  When Plaintiff refused, Walters informed him that security was monitoring him.  Heal and Walters escorted Plaintiff off the premises.

44.     Plaintiff filed a grievance disputing his termination on September 15, 2022.

45.     At a Local 891 meeting on October 11, 2022, UPS Labor Representative Daniel Greer, Walters, Heal, and Pinkard confronted Plaintiff about the grievance with only three days' notice and without providing him with his time records. They pressured Plaintiff to resign in lieu of termination in exchange for two paychecks.  Plaintiff refused and requested a neutral panel both hear his case and investigate Heal and Walters.

46.     On October 19, 2022, the National Panel overturned Plaintiff's termination following a hearing.  It reinstated Plaintiff effective October 31, 2022, although without backpay. Pinkard withdrew Plaintiff's complaints of disparate treatment without Plaintiff's consent, in violation of the CBA. Local 891 also failed to provide the certified letter of the results that it provided his similarly-situated white colleagues, in violation of the Bargaining Agreement. Plaintiff's return to work was scheduled.

47.     On October 25, 2022, Plaintiff requested FMLA to care for his ailing grandmother.

48.     On October 31, 2022, Pinkard placed Plaintiff on short term disability for a day in retaliation for his pending FMLA request, and his prior complaints of discrimination.

49.     On November 21, 2022, UPS' carrier denied Plaintiff FMLA because Walters entered incorrect dates on Plaintiff's paperwork, in retaliation for his prior complaints.

50.     During this period, UPS repeatedly sent Plaintiff backdated 72-hour Notices of Termination.  Pinkard also constantly called Plaintiff.  Both UPS and Local 891 engaged in this harassment as a result of discriminatory animus towards his race and in retaliation for his recent complaints of race discrimination.   On November 28, 2022, Plaintiff formally complained to Pinkard, reiterating his claims of racial discrimination and retaliation while he was taking care of his sick grandmother. The following day, Pinkard approved Plaintiff for FMLA from October 30, 2022, through March 27, 2023 and instructed him to disregard the termination notices.

51.     On January 10, 2023, Plaintiff experienced insurance coverage issues at the dentist. He escalated the issue to Pinkard. Pinkard never resolved the issue, in retaliation for utilizing FMLA and his prior complaints of discrimination.

52.     On January 23, 2023, Plaintiff filed his first EEOC charge, alleging discrimination against both Defendants. Neither Pinkard nor Walters have interacted with Plaintiff since filing. Pinkard has actively ignored Plaintiff's calls.

53.     UPS cancelled Plaintiff's medical benefits from January 2023 through March 2023 in retaliation for utilizing FMLA and his prior complaints of discrimination.

54.     On March 23, 2023, Plaintiff suffered from a stroke. The following day, Plaintiff's friend notified Pinkard. Pinkard referred this friend to Local 891's Pension and Insurance Clerk Rhonda Rutherford, suggesting Plaintiff should see if he was eligible for short term disability, and to Walters. Pinkard's refusal to speak directly with Plaintiff was retaliation for Plaintiff's complaints of discrimination against the Local 891 and utilizing FMLA.

55.     On March 26, 2023, Plaintiff's exhausted his FMLA.  The hospital discharged him the following day.  Immediately upon discharge, UPS's Resources Living Counselor finally

decided to call Plaintiff. Plaintiff could not respond due to being incapacitated. Such delay in retaliation for utilizing FMLA and his prior complaints of discrimination.

56. Meanwhile, Walters engaged in retaliation during this time by refusing to respond to Plaintiff was simultaneously issuing Plaintiff reprimands. He issued two disciplinary actions despite Plaintiff being on leave, in retaliation for utilizing FMLA and his prior complaints of discrimination.

57. Between April and September 2023, Local 891 engaged in a pattern of disrupting Plaintiff's treatment. Rutherford repeatedly led Plaintiff to believe that she was confirming his eligibility for short term disability and obtaining documents for his providers to complete. However, Plaintiff's treatment providers repeatedly denied receiving such requests. After confronting her in July 2023 regarding her repeated misrepresentations, Rutherford failed to respond to Plaintiff's emails. Local 891's dereliction of its obligations at a time when Plaintiff was in greatest need was in retaliation for utilizing FMLA and his prior complaints of discrimination.

58. On September 15, 2023 Rutherford informed Plaintiff that he had been denied disability benefits because UPS had not executed the paperwork. Subsequently, a third-party administrator informed Plaintiff the denial was related to a coding issue with either UPS or Local 891. On September 26, 2023, Plaintiff emailed Rutherford, Walters, and Pinkard to rectify the problem. All ignored him in retaliation for utilizing FMLA and his prior complaints of discrimination.

59. Plaintiff did not receive disability benefits until almost one year after his stroke, in February and April 2024 due to Defendants' retaliatory conduct.

## AS AND FOR A FIRST CAUSE OF ACTION
### (DISCRIMINATION IN VIOLATION OF 42 USC 2000e)

**AGAINST DEFENDANT UPS**

60.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

61.     Defendant UPS's discrimination against Plaintiff concerned one of the activities protected by Title VII of the Civil Rights Act of 1964, 42 USC § 2000e-2.

62.     Title VII of the Civil Rights Act of 1964 states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 USC § 2000e-2.

63.     Plaintiff is a member of protected classes pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2—namely, Plaintiff is an African American.

64.     Plaintiff possessed proper qualifications for Defendant to continue their employment and promote them as evidenced by Defendant's continuation of Plaintiff employment since April 19, 2021. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's discriminatory animus against Plaintiff.

65.     Defendant and/or its agents engaged in an unlawful practice by discriminating against Plaintiff because of their race. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of their race by subjecting them to disparate treatment in the terms and conditions of their employment. Specifically, Defendant repeatedly used offensive racial commentary in the workplace and targeted Plaintiff for suspension and reprimand in a way that employees outside of Plaintiff's protected class were not. To date, Defendant continues to subject

Plaintiff to disparate treatment in the terms and conditions of his employment, causing Plaintiff significant financial hardship, mental anguish, and emotional distress.

66.     As a direct and proximate result of Defendant UPS's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

67.     As a direct and proximate result of Defendant UPS's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

## AS AND FOR A SECOND CAUSE OF ACTION
### (DISCRIMINATION IN VIOLATION OF 42 USC 2000e)
### AGAINST DEFENDANT LOCAL 891

68.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

69.     Defendant Local 891's discrimination against Plaintiff concerned one of the activities protected by Title VII of the Civil Rights Act of 1964, 42 USC § 2000e-2(1).

70.     Title VII of the Civil Rights Act of 1964 states: "It shall be an unlawful employment practice for a labor organization to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 USC § 2000e-2(1).

71.     Plaintiff is a member of protected classes pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2(1)—namely, Plaintiff is an African American.

72.     Defendant Local 891 is a "labor organization" as contemplated Title VII of the Civil Rights Act of 1964, Section 2000e-2(1).

73.     Defendant Local 891 and/or its agents engaged in an unlawful practice by discriminating against Plaintiff because of their race. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of their race by deterring him from pursuing claims of race discrimination, failing to investigate his claims of racial discrimination, and withdrawing his race discrimination grievance against his wishes. Defendant targeted Plaintiff for reprimand in a way that employees outside of Plaintiff's protected class were not. To date, Defendant continues to subject Plaintiff to disparate treatment in the terms and conditions of his employment, causing Plaintiff significant financial hardship, mental anguish, and emotional distress.

74.     Defendant Local 891's actions were motivated by a discriminatory animus.

75.     Defendant Local 891's actions directly injured Plaintiff as herein set forth.

76.     Defendant Local 891 breached its duty of fair representation.

77.     As a direct and proximate result of Defendant Local 891's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

78.     As a direct and proximate result of Defendant Local 891's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to

13

humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional

pain and suffering, warranting an award of monetary damages and other relief.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(FOR RACIAL DISCRIMINATION UNDER 42 USC §1981)**
**AGAINST DEFENDANT UPS**

79.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs

were more fully set forth herein at length.

80.     The Civil Rights Act of 1866 provides, in pertinent part: "All persons within the

jurisdiction of the United States shall have the same right in every State and Territory to make and

enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and

proceedings for the security of persons and property as is enjoyed by white citizens, and shall be

subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no

other."  42 USC §1981**.**

81.     Plaintiff is a member of a racial minority, identifying as African American.

82.     Defendant UPS had the intent of discriminating against Plaintiff on the basis of his

race.

83.     Defendant UPS treated Plaintiff differently because of his race.

84.     Defendant UPS's discrimination concerned one of the statute's enumerated

activities, to make and enforce contracts as related to Plaintiff's employment.

85.     As a direct and proximate result of Defendant UPS's unlawful conduct in violation

of the Civil Rights Act of 1866, 42 USC §1981, Plaintiff has suffered and continues to suffer

monetary and/or economic damages, including, but not limited to, loss of past and future income,

compensation and benefits, warranting an award of monetary damages and other relief.

86.     As a direct and proximate result of Defendant UPS's unlawful discriminatory conduct in violation of the Civil Rights Act of 1866, 42 USC §1981, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

### AS AND FOR A FOURTH CAUSE OF ACTION
### (FOR RACIAL DISCRIMINATION UNDER 42 USC §1981)
### AGAINST DEFENDANT LOCAL 891

87.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

88.     The Civil Rights Act of 1866 provides, in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 USC §1981.

89.     Plaintiff is a member of a racial minority, identifying as African American.

90.     Defendant Local 891 had the intent of discriminating against Plaintiff on the basis of his race.

91.     Defendant Local 891 treated Plaintiff differently because of his race.

92.     Defendant Local 891's discrimination concerned one of the statute's enumerated activities, to make and enforce contracts as related to Plaintiff's employment.

93. As a direct and proximate result of Defendant Local 891's unlawful conduct in violation of the Civil Rights Act of 1866, 42 USC §1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

94. As a direct and proximate result of Defendant Local 891's unlawful discriminatory conduct in violation of the Civil Rights Act of 1866, 42 USC §1981, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

## AS AND FOR A FIFTH CAUSE OF ACTION
## (RETALIATION IN VIOLATION OF  42 U.S.C. § 2000e)
## AGAINST DEFENDANT UPS

95. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

96. Title VII of the Civil Rights Act of 1964 prohibits discrimination and retaliation.

97. Title VII of the Civil Rights Act of 1964 provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice..."  42 USC § 2000e-3

98. Defendant UPS's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

16

99.    The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

100.    Plaintiff engaged in protected activity by complaining about discrimination and retaliation and/or opposing Defendant's unlawful employment practices on February 2, 2022, verbally to Walters and Holliday and in his written grievance and three complaints of discrimination filed with the EEOC on January 23, 2023, November 27, 2023, January 29, 2024.

101.    Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to management, and managers/supervisors addressed said complaints directly with Plaintiff.

102.    As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by targeting Plaintiff for reprimand, suspension, and termination through September 2022, failing to investigate his written grievance alleging discrimination in February 2022, terminating Plaintiff after filing his race discrimination grievance, and, removing Plaintiff's access to health benefits after March 2023.

103.    Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

104.    As a direct and proximate result of Defendant UPS's unlawful retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

105.    As a direct and proximate result of Defendant UPS's unlawful retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff

suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### AS AND FOR A SIXTH CAUSE OF ACTION
### (RETALIATION IN VIOLATION OF 42 U.S.C. § 2000e) AGAINST DEFENDANT LOCAL 891

106.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

107.    Title VII of the Civil Rights Act of 1964 prohibits discrimination and retaliation.

108.    Title VII of the Civil Rights Act of 1964 provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice..." 42 USC § 2000e-3.

109.    Defendant Local 891's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

110.    The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

111.    Plaintiff engaged in protected activity by complaining about discrimination and retaliation and/or opposing Defendant's unlawful employment practices on February 2, 2022, verbally to Walters and in his written grievance and three complaints of discrimination filed with the EEOC on January 23, 2023, November 27, 2023, January 29, 2024.

112.    Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to management, and managers/supervisors addressed said complaints directly with Plaintiff.

113.    As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by targeting Plaintiff for reprimand, suspension, and termination through September 2022, specifically failing to investigate Plaintiff's claims of discrimination filed in February 2022, withdrawing Plaintiff's complaint of race discrimination against Defendant UPS in October 2022 against Plaintiff's wishes, and contributing to the removal of Plaintiff's access to health benefits after March 2023.

114.    Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

115.    As a direct and proximate result of Defendant Local 891's unlawful retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

116.    As a direct and proximate result of Defendant Local 891's unlawful and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (RETALIATION UNDER 42 USC §1981)
### AGAINST DEFENDANT UPS

117.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

118.    42 USC §1981 prohibits both discrimination and retaliation.

119.    Defendants' employment practices and union representation as alleged at length herein constitute an impermissible act of retaliation in violation of 42 USC §1981. The stated reasons for Defendants' conduct were not the true reasons but served as a pretext to conceal Defendants' discriminatory animus against Plaintiff.

120.    Plaintiff engaged in protected activity by complaining about discrimination and retaliation and/or opposing Defendants' unlawful employment practices on February 2, 2022, verbally to Walters and in his written grievance and three complaints of discrimination filed with the EEOC on January 23, 2023, November 27, 2023, January 29, 2024.

121.    Defendants were aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to management, and managers/supervisors addressed said complaints directly with Plaintiff.

122.    As fully demonstrated within this Complaint, Defendants engaged in a course of retaliatory and adverse conduct against Plaintiff by targeting Plaintiff for reprimand, suspension, and termination through September 2022, terminating Plaintiff after filing his race discrimination grievance, withdrawing Plaintiff's complaint of race discrimination against Defendant UPS in October 2022 against Plaintiff's wishes, removing Plaintiff's access to health benefits after March 2023, and delaying Plaintiff's short term disability application from March 2023 through August 2023.

123.     Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

124.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of 42 USC §1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

125.     As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of 42 USC §1981, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### AS AND FOR A EIGHTH CAUSE OF ACTION
### (RETALIATION UNDER 42 USC §1981)
### AGAINST DEFENDANT LOCAL 891

126.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

127.     42 USC §1981 prohibits both discrimination and retaliation.

128.     Defendant Local 891's employment practices and union representation as alleged at length herein constitute an impermissible act of retaliation in violation of 42 USC §1981.  The stated reasons for Defendants' conduct were not the true reasons but served as a pretext to conceal Defendants' discriminatory animus against Plaintiff.

129.     Plaintiff engaged in protected activity by complaining about discrimination and retaliation and/or opposing Defendants' unlawful employment practices on February 2, 2022,

verbally to Walters and in his written grievance and three complaints of discrimination filed with the EEOC on January 23, 2023, November 27, 2023, January 29, 2024.

130.    Defendants were aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to management, and managers/supervisors addressed said complaints directly with Plaintiff.

131.    As fully demonstrated within this Complaint, Defendants engaged in a course of retaliatory and adverse conduct against Plaintiff by targeting Plaintiff for reprimand, suspension, and termination through September 2022, terminating Plaintiff after filing his race discrimination grievance, withdrawing Plaintiff's complaint of race discrimination against Defendant UPS in October 2022 against Plaintiff's wishes, removing Plaintiff's access to health benefits after March 2023, and delaying Plaintiff's short term disability application from March 2023 through August 2023.

132.    Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

133.    As a direct and proximate result of Defendant Local 891's unlawful retaliatory conduct in violation of 42 USC §1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

134.    As a direct and proximate result of Defendant Local 891's unlawful retaliatory conduct in violation of 42 USC §1981, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

### AS AND FOR A NINTH CAUSE OF ACTION
**(DISCRIMINATION AND RETALIATION IN VIOLATION OF 29 U.S.C. § 2601)**
**AGAINST DEFENDANTS UPS and LOCAL 891**

135.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

136.    Defendant's actions against Plaintiff concerned one of the activities protected by the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*.

137.    The Family Medical Leave Act states, in pertinent part: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

138.    Plaintiff exercised her rights pursuant to the FMLA by requesting intermittent FMLA in order to provide care to his elderly grandmother, which was exacerbated by Defendant's discriminatory and retaliatory actions.

139.    Plaintiff possessed proper qualifications for Defendant to continue their employment. Specifically, Plaintiff enjoyed continued employment with Defendant beginning on April 19, 2021. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

140.    Defendants and/or their agents engaged in an unlawful practice and intended to retaliate against Plaintiff by submitting false documents to ensure denial of his FMLA rights and ceasing Plaintiff's medical benefits beginning in March 2023 after he submitted his intermittent FMLA request in October 2022. Defendants also delayed processing of Plaintiff's application for short term disability benefits.

141.     Defendant unlawfully "interfered with" and "restrained" Plaintiff's FMLA rights by submitting false documents to ensure denial of his FMLA rights and ceasing Plaintiff's medical benefits beginning in March 2023 shortly after he exercised said rights.

142.     As a direct and proximate result of Defendant's unlawful conduct in violation of FMLA, 29 U.S.C. § 2601, *et seq*., Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

143.     As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the FMLA, 29 U.S.C. § 2601, *et seq*., Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**WHEREFORE** Plaintiff Derrick Grays demands judgment as follows:

a) A declaratory judgment that actions, conduct, and practices of Defendants complained of herein violate the laws of the United States;

b) An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

c) An award of damages in the amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for mental anguish, humiliation,

24

embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

e) An award of damages for any and all other monetary/non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

f) An award of punitive damages in an amount to be determined at trial;

g) The costs and disbursements of this action; and

h) Such other and further relief as this Court may deem just, proper, and equitable.

Dated: New York, New York
December 16, 2024

CAMPBELL LAW FIRM, P.A.

By: _____
Jason E. Campbell
904 N. Main Street
Water Valley, MS 38965
Tel: 662-537-4921
Jason@campbelllawms.net

WHITE, ROSE & HILFERTY, P.C.
Michael P. Hilferty
*Attorneys for Plaintiff (Pro Hac Vice pending)*
757 Third Ave, 20th Floor
New York, New York 10017
Tel: 917 633 5760
MPH@nycjobattorney.com

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
-----------------------------------------------------------------------x

DERRICK GRAYS,                                                    Case No.:

               Plaintiffs,

       -against-                                          <u>**VERIFICATION**</u>

UNITED PARCEL SERVICE, INC., INTERNATIONAL
BROTHERHOOD OF TEAMSTERS LOCAL 891,

               Defendant.
-----------------------------------------------------------------------x

     **PLAINTIFF DERRICK GRAYS**, pursuant to the provisions of 28 U.S.C. 1746, declares the following under penalty of perjury that the foregoing is true and correct:

    1.     I am the Plaintiff in the above-captioned matter.

    2.     I have read the foregoing Complaint and know the content thereof, that the same is of my own knowledge except as to the matters therein stated upon information and belief; and that as to those matters, I believe the same to be true.

Executed:    West Point, Mississippi
               December 15, 2024

                                              **DERRICK GRAYS**

1