### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF MISSISSIPPI

| | | |
|---|---|---|
| **DERRICK GRAYS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **Case No. 1:24-CV-217GHD-DAS** |
| **v.** | ) | |
| | ) | |
| **UNITED PARCEL SERVICE INC.,** | ) | |
| **INTERNATIONAL BROTHERHOOD** | ) | |
| **OF TEAMSTERS LOCAL 981** | ) | |
| | ) | |
| **Defendant.** | ) | |

### DEFENDANT UNITED PARCEL SERVICE, INC.'S ANSWER TO PLAINTIFF'S COMPLAINT

Defendant United States Parcel Service, Inc. ("UPS") hereby answers the complaint of Plaintiff, Derrick Grays, ("Plaintiff") as follows:

### NATURE OF THE CASE

1.      Plaintiff brings this action alleging that Defendant discriminated against them based upon their race and age, as well as retaliation, in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 et seq., Civil Rights Act of 1866 42 U.S.C. § 1981 et seq. ("Section 1981"), and the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*. Plaintiff seeks damages to redress his financial and emotional damages that Defendants' unlawful discriminatory practices in violation of federal statutes inflicted upon them.

**ANSWER:** The allegations in Paragraph 1 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000 et seq., Civil Rights Act of 1866 42 U.S.C. § 1981 et seq. ("Section 1981"), and the Family Medical Leave

Act, 29 U.S.C. § 2601, *et seq*. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

## JURISDICTION & VENUE

2.      Jurisdiction of this Court is proper under 42 U.S.C. § 2000, et seq., and 28 U.S.C. §§ 1331 and 1343.

**ANSWER:** UPS admits that Plaintiff seeks to establish this Court's jurisdiction over the claims at issue in the Complaint. The remaining allegations in Paragraph 2 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits that this Court's jurisdiction is proper. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

3.      Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) as it is a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

**ANSWER:** UPS admits that Plaintiff seeks to establish this Court's jurisdiction over the claims at issue in the Complaint. The remaining allegations in Paragraph 3 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits that this Court's venue is proper. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

## **PROCEDURAL REQUIREMENTS**

4.      On January 23, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, 423-2023-01718 against Defendant United Parcel Service, Inc.

**ANSWER:** UPS admits that Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission dated January 23, 2023. UPS denies any allegation of misconduct or other wrongdoing alleged in the Charge of Discrimination. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

5.      On November 27, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, 423-2023-01958 against Defendant United Parcel Service, Inc.

**ANSWER:** UPS admits that Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission dated November 27, 2023. UPS denies any allegation of misconduct or other wrongdoing alleged in the Charge of Discrimination. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

6.      On January 29, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, 423-2023-01745 against Defendant International Brotherhood of Teamsters Local 891.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 6 of the Complaint. Therefore, UPS denies the allegations in Paragraph 6 of the Complaint.

7.      Plaintiff's formal Charges of Discrimination filed with the EEOC asserted the same factual allegations that are asserted in this Verified Complaint.

**ANSWER:** UPS admits that Plaintiff filed Charges of Discrimination with the Equal Employment Opportunity Commission against UPS dated January 23, 2023, and November 27, 2023, but UPS denies that the Charges of Discrimination assert the same factual allegations that are asserted in Plaintiff's Complaint. UPS further denies any allegation of misconduct or other wrongdoing alleged in the Charges of Discrimination. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 7 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 7 of the Complaint.

8. On September 18, 2024, Plaintiff receive three Notice of Suit Rights dated September 18, 2024 from the EEOC.

**ANSWER:** UPS admits the EEOC issued a Determination and Notice of Rights on September 18, 2024. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 8 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 8 of the Complaint.

9. Plaintiff timely and properly commenced this action within 90 days of receipt of the Notice of Suit Rights after exhausting all administrative remedies with the EEOC.

**ANSWER:** The allegations in Paragraph 9 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits that Plaintiff filed his Complaint within 90 days of September 18, 2024. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 9 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 9 of the Complaint.

## PARTIES

10.     At all relevant times, Plaintiff was a resident of the State of Mississippi, County of Clay.

**ANSWER:** UPS states that it does not know the meaning of the term "all relevant times," as it is vague and subject to multiple interpretations. UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 10 of the Complaint. Therefore, UPS denies the allegations in Paragraph 10 of the Complaint.

11.     Defendant United Parcel Service, Inc. ("UPS" or "Defendant") was a domestic corporation organized pursuant to the laws of the State of Delaware.

**ANSWER:** Admitted.

12.     As all times relevant, UPS owned, operated, and/or maintained its principal headquarters at 55 Glenlake Parkway, NE, Atlanta, Georgia 03032.

**ANSWER:** UPS states that it does not know the meaning of the term "all times relevant," as it is vague and subject to multiple interpretations. UPS admits that it is headquartered at 55 Glenlake Parkway, NE, Atlanta, Georgia 30328. UPS denies the remaining allegations in Paragraph 12 of the Complaint.

13.     At all times relevant, UPS owned, operated, and/or maintained a package processing facility in the State of Mississippi, County of Lowndes, City of Columbus ("Columbus facility").

**ANSWER:** UPS states that it does not know the meaning of the term "all times relevant," as it is vague and subject to multiple interpretations. UPS admits that UPS maintained a facility in Columbus, Mississippi, which is located within the jurisdictional boundaries of Lowndes County, Mississippi.

14.     Defendant International Brotherhood of Teamsters Local 891 ("Local 891" or "Defendant") was a domestic labor organization constituted pursuant to the laws of the State of Mississippi.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 14 of the Complaint. Therefore, UPS denies the allegations in Paragraph 14 of the Complaint.

15.     At all times relevant, Local 891 owned, operated, and/or maintained its principal place of business at 2560 Valley Street, Jackson, Mississippi, 38204.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 15 of the Complaint. Therefore, UPS denies the allegations in Paragraph 15 of the Complaint.

## RELEVANT FACTS

16.     Plaintiff is a 44-year-old African American male.

**ANSWER:** Upon information and belief, UPS admits Plaintiff identifies as an African American male. UPS denies the remaining allegations in Paragraph 16 of the Complaint.

17.     On April 19, 2021, UPS hired Plaintiff as a Mechanic First Class at its Columbus facility.

**ANSWER:** Admitted.

18.     Plaintiff's supervisor for the entirety of his employment with UPS has been UPS Automotive Fleet Supervisor Brett Walters, a Caucasian male.  Walters supervised approximately nine Mechanics First Class of varying racial identities, including Caucasian and African American, across multiple facilities.

**ANSWER:** UPS admits Plaintiff reported directly to Automotive Fleet Supervisor, Brett Walters ("Walters") who identifies as a Caucasian male. UPS further admits Walters has supervised various Mechanics who identify as both Caucasian and African American, covering seven

facilities. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 18 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 18 of the Complaint.

19.     Within a month of Plaintiff's hiring, Walters took Plaintiff to lunch. Each of them had recently had a birthday. Walters asked Plaintiff's age; Plaintiff replied he had just turned 41. Walters indicated if he had known Plaintiff's age, he would not have hired Plaintiff and instead have hired his boss Timothy Heal's son, an 18-year-old Caucasian male.

**ANSWER:** UPS admits Walters took Plaintiff to lunch for safety recognition, within a month of being hired. UPS denies the remaining allegations in Paragraph 19 of the Complaint.

20.     Walters perpetuated a racially-discriminatory work environment during Plaintiff's time working for UPS by encouraging racially motivated commentary within the workplace.

**ANSWER:** Denied.

21.     Walters would make racially-discriminatory comments and racially-insensitive jokes directed at Plaintiff. He made very frequent references to "cracking a whip," an allusion to slavery. If Plaintiff would thank Walters for lunch. Walters on at least one occasion said, "You're an investment, get back in the field." Walters and other co-workers would also call Plaintiff "Can't Get Right," the name of a mute African American prisoner character from the 1999 film *Life* (based on 1932 Jim Crow-era firm filled with racial overtones). Walters also commented on Plaintiff's taste in football teams by saying that Plaintiff "must be on drugs," another racially motivated offensive statement.

**ANSWER:** Denied.

22.     Walters would often target Plaintiff for working on the computer, despite the fact it was related to Plaintiff's job responsibilities. If Plaintiff indicated he was discussing parts

ordering and searches with younger and/or Caucasian mechanics on the phone, such as Rocky, Clay or Stacy Quinn, Walters would relent, considering Plaintiff's work justified because a Caucasian mechanic was on the phone.

**ANSWER:** Denied.

23.     Walters similarly indicated a discriminatory animus by making racially motivated negative comments towards other African American workers. Upon information and belief, Walters either terminated or forced the resignation of resign another African American employee, Anthony, for stealing time – the same pretextual reason ultimately used to justify Plaintiff's termination.  Walters referred to another African American female employee as "ghetto." When this employee's truck caught fire, Walters commented it was probably all of the fast food or gas station food she ate.  Walters had a particular venom toward African American employees that he did not exhibit against Caucasian employees.

**ANSWER:** Denied.

24.     In June 2021, Walters made "cracking the whip" references to Plaintiff; Plaintiff told Walters not to speak to him that way and walked away.

**ANSWER:** Denied.

25.     On August 19, 2021, Plaintiff received a written warning for poor workmanship, arising from a leaking seal on one of the tires. However, Mechanic First Class Stacy Quinn evaluated the leak and determined it was not Plaintiff's fault.  He went to lengths to correct Walters on Plaintiff's behalf.  Walters disregarded the clean evidence and still refused to withdraw the warning.  Quinn – a Caucasian – disclosed to Plaintiff that he never received any oral or written reprimands for the exact same malfunctions.

**ANSWER:** UPS admits Plaintiff received a written warning for poor workmanship on August 19, 2021, after he incorrectly changed an oil filter, resulting in a leak at a customer's business. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 25 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 25 of the Complaint.

26.     On October 22, 2021, Plaintiff emailed Walters requesting he remove the written warning because it has been proved the issue was not attributable to his work. Walters simply responded Plaintiff would have to wait nine months for the reprimand to expire, wrongfully placing blame on Plaintiff at fault for the vehicle leak.

**ANSWER:** Denied.

27.     On November 2, 2021, Walters warned Plaintiff that he was bringing negative attention to himself by confronting Walters and Holiday about the August reprimand.

**ANSWER:** Denied.

28.     Walters established a system of harsher consequences for African Americans employees.  For example, Walter represented to Plaintiff and Parson that would terminate anyone UPS employee who was dishonest.  On December 13, 2021, Walters interviewed Plaintiff to investigate a fire damage to a package car.  Walters knew that the Caucasian driver of this package vehicle falsely stated that he attempted to use a fire extinguisher to put out the blaze.  However, Walter declined to discipline the Caucasian driver.

**ANSWER:** UPS admits Walters advised his employees that dishonesty under the Collective Bargaining Agreements ("CBAs") is a cardinal infraction, and therefore, a terminable offense. UPS states that Walters does not have authority to discipline drivers, as he is not an On-Road Supervisor. UPS denies the remaining allegations in Paragraph 28 of the Complaint.

29.     On January 26, 2022, Walter and Sop steward Thomas Holliday attempted to suspend Plaintiff for allegedly incorrectly double sealing an oil filter on Holliday's truck. Before delivering the news, Walters made another allusion to slave-whipping: "Brace yourself, this is going to sting a little bit." During this meeting, Plaintiff formally complained that Walters was targeting him because he was African American. He brought the filter to show Walters that the part itself was faulty, not his work. Walters denied any discrimination. He confiscated the filter, abruptly left the meeting, and did not return to the facility for several months.

**ANSWER:** UPS admits Walters made the statement "brace yourself, this is going to sting a little bit" before disciplining Plaintiff for incorrectly double sealing an oil filter. UPS admits Plaintiff brought the oil filter to Walters and it did not have an overing on it, further justifying the discipline. Finally, UPS admits that Walters confiscated the oil filter as it is hazardous material and should not be left in the facility. UPS denies the remaining allegations in Paragraph 29 of the Complaint.

30.     The following day, Holliday warned Plaintiff that [sic] would be accused of stealing time for trying to get paid for defending his claims of race discrimination.

**ANSWER:** Denied.

31.     On January 28, 2022, Caucasian Driver Cole Eller told Plaintiff that Walters did not like Plaintiff because Plaintiff was an educated black man.

**ANSWER:** Denied.

32.     Several days later, African American Alternate Ship Steward Tony Henry encountered Plaintiff in the restroom. Henry advised that Walters intended to terminate Plaintiff because he was black. Plaintiff responded he had not been terminated but he raised a race discrimination complaint. Henry pointed to his hand (alluding to his race), and told Plaintiff to be careful.

**ANSWER:** Denied.

33.    On February 2, 2022, Plaintiff filed a grievance with Shop Steward Thomas Holliday complaining harassment based upon race and age discrimination in his workplace, specifying a violation under Article 36 of the Collective Bargaining Agreement, Nondiscrimination. Holliday deterred Plaintiff from including many specific details and from dating the grievance. After Plaintiff realized his copy of the grievance was missing pages, Holliday indicated they would fix it bit failed to do so. Holliday warned Plaintiff that he would be targeted for termination if he alleged race discrimination. When Plaintiff revealed that he had videoed his work to prove it satisfactory, Holliday warned Plaintiff that UPS would accuse Plaintiff of stealing time on the close working to prove his case for racial discrimination.

**ANSWER:** UPS admits Plaintiff filed a grievance on February 2, 2022, alleging he had been disciplined for a double-sealed oil filter because of his race and age. UPS denies the remaining allegations in Paragraph 33 of the Complaint.

34.    Beginning on February 3, 2022 and continuing thereafter, Walters harassed Plaintiff via email about tasks that were supposed to be performed and warned Plaintiff he was being watched. This increased scrutiny was retaliation for Plaintiff's verbal allegations of race discrimination.

**ANSWER:**  Denied.

35.    On February 7, 2022, Walters sternly emailed Plaintiff, again in retaliation for his verbal allegations of race discrimination.

**ANSWER:** Denied.

36.     On February 9, 2022, Holliday discouraged Plaintiff from alleging claims of racial discrimination Holliday stated that Local 891 Business Manager Jimmy Pinkard indicated it would be best if disregarded the race discrimination grievance.

**ANSWER:** Denied.

37.     Neither Local 891 not UPS inticaled an investigation as a result of Plaintiff's grievance, in violation of bother UPS' policies and procedures and the CBA.

**ANSWER:** Denied.

38.     On February 18, 2022, Walters retaliated against Plaintiff by locking him out of the timekeeping system to make it appear Plaintiff was five hours late.

**ANSWER:** Denied.

39.     On February 24, 2022, Walters again locked Plaintiff out of the timekeeping system in retaliation for his complaint of race discrimination.

**ANSWER:** Denied.

40.     On April 26, 2022, a worker for Caucasian male subcontractor Tim Moody physically threatened Plaintiff, requiring Plaintiff to leave the immediate area. The next day Plaintiff reported the incident to Holliday, who disregarded it.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 40 of the Complaint. Therefore, UPS denies the allegations in Paragraph 40 of the Complaint.

41.     On July 19, 2022, Plaintiff overheard Walters in an agitated state complaining that UPS hired African American Darrell Montgomery rather than promoting his manager, Caucasian Automotive Manager Timothy Heal.

**ANSWER:** Denied.

42.     On August 24, 2022, Walters approved Plaintiff's request for a late arrival due to a family emergency. However, Plaintiff learned that Heal went around asking employees where Plaintiff was that day. Heal – who had virtually no prior interaction with Plaintiff – applied this increased scrutiny in direct retaliation to Plaintiff's complaint.

**ANSWER:** Denied.

43.     On September 1, 2022, UPS terminated Plaintiff for allegedly stealing time. No evidence existed to support this termination. Walters attempted to evade responsibility for terminating Plaintiff by falsely assuring him that he would be rehired if he resigned. When Plaintiff refused, Walters informed him that security was monitoring him. Heal and Walters escorted Plaintiff off the premises.

**ANSWER:** UPS admits it terminated Plaintiff's employment for dishonesty, on September 1, 2022. UPS further admits that it is standard procedure to walk employees off the premises after their employment has been terminated. UPS denies the remaining allegations in Paragraph 43 of the Complaint.

44.     Plaintiff filed a grievance disputing his termination on September 15, 2022.

**ANSWER:** Admitted.

45.     At a Local 891 meeting on October 11, 2022, UPS Labor Representative Daniel Greer, Walters, Heal, and Pinkard confronted Plaintiff about the grievance with only three days' notice and without providing him with his time records. They pressured Plaintiff to resign in lieu of termination in exchange for two paychecks. Plaintiff refused and requested a neutral panel both hear his case and investigate Heal and Walters.

**ANSWER:** Denied.

46.     On October 19, 2022, the National Panel overturned Plaintiff's termination following a hearing. It reinstated Plaintiff effective October 31, 2022, although without backpay. Pinkard withdrew Plaintiff's complaints of disparate treatment without Plaintiff's consent, in violation of the CBA. Local 891 also failed to provide the certified letter of the results that it provided his similarly-situated white colleagues, in violation of the Bargaining Agreement. Plaintiff's return to work was scheduled.

**ANSWER:** UPS admits Plaintiff's grievance was heard by a neutral panel, and in or around October 31, 2022, the Union and UPS agreed to reduce Plaintiff's discharge to a "time-served suspension," without backpay. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 46 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 46 of the Complaint.

47.     On October 25, 2022, Plaintiff requested FMLA to care for his ailing grandmother.

**ANSWER:** UPS admits Plaintiff requested FMLA protected leave through UPS's third-party administrator on October 26, 2022. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 47 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 47 of the Complaint.

48.     On October 31, 2022, Pinkard placed Plaintiff on short term disability for a day in retaliation for his pending FMLA request, and his prior complaints of discrimination.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 47 of the Complaint. Therefore, UPS denies the allegations in Paragraph 48 of the Complaint.

49.     On November 21, 2022, UPS' carrier denied Plaintiff FMLA because Walters entered incorrect dates on Plaintiff's paperwork, in retaliation for his prior complaints.

**ANSWER:** Denied.

50.     During this period, UPS repeatedly sent Plaintiff backdated 72-hour Notices of Termination. Pinkard also constantly called Plaintiff. Both UPS and Local 891 engaged in this harassment as a result of discriminatory animus towards his race and in retaliation for his recent complaints of race discrimination. On November 28, 2022, Plaintiff formally complained to Pinkard, reiterating his claims of racial discrimination and retaliation while he was taking care of his sick grandmother. The following day, Pinkard approved Plaintiff for FMLA from October 30, 2022, through March 27, 2023 and instructed him to disregard the termination notices.

**ANSWER:** UPS states that it does not know the meaning of the term "during this period" as it is vague and subject to multiple interpretations. UPS specifically denies the allegations in Paragraph 50 of the Complaint, as they relate to UPS. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 50 of the Complain. Therefore, UPS denies the remaining allegations in Paragraph 50 of the Complaint.

51.     On January 10, 2023, Plaintiff experienced insurance coverage issues at the dentist. He escalated the issue to Pinkard. Pinkard never resolved the issue, in retaliation for utilizing FMLA and his prior complaints of discrimination.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 51 of the Complaint. Therefore, UPS denies the allegations in Paragraph 51 of the Complaint.

52.     On January 23, 2023, Plaintiff filed his first EEOC charge, alleging discrimination against both Defendants. Neither Pinkard nor Walters have interacted with Plaintiff since filing. Pinkard has actively ignored Plaintiff's calls.

**ANSWER:** UPS admits that Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission dated January 23, 2023. UPS denies any allegation of misconduct or other wrongdoing alleged in the Charge of Discrimination. UPS further denies Plaintiff is entitled

to any damages, redress, or other relief based on the laws alleged. UPS specifically denies the remaining allegations in Paragraph 52, as they relate to UPS. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 52 of the Complaint, as they relate to the Union. Therefore, UPS denies the remaining allegations in Paragraph 52 of the Complaint.

53.     UPS cancelled Plaintiff's medical benefits from January 2023 through March 2023 in retaliation for utilizing FMLA and his prior complaints of discrimination.

**ANSWER:** Denied.

54.     On March 23, 2023, Plaintiff suffered from a stroke. The following day, Plaintiff's friend notified Pinkard. Pinkard referred this friend to Local 891's Pension and Insurance Clerk Rhonda Rutherford, suggesting Plaintiff should see if he was eligible for short term disability, and to Walters. Pinkard's refusal to speak directly with Plaintiff was retaliation for Plaintiff's complaints of discrimination against the Local 891 and utilizing FMLA.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 54 of the Complaint. Therefore, UPS denies the allegations in Paragraph 54 of the Complaint.

55.     On March 26, 2023, Plaintiff's exhausted his FMLA. The hospital discharged him the following day. Immediately upon discharge, UPS's Resources Living Counselor finally decided to call Plaintiff. Plaintiff could not respond due to being incapacitated. Such delay in retaliation for utilizing FMLA and his prior complaints of discrimination.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 55 of the Complaint. Therefore, UPS denies the allegations in Paragraph 55 of the Complaint.

56.     Meanwhile, Walters engaged in retaliation during this time by refusing to respond to Plaintiff was simultaneously issuing Plaintiff reprimands. He issued two disciplinary actions

despite Plaintiff being on leave, in retaliation for utilizing FMLA and his prior complaints of discrimination.

**ANSWER:** UPS states that it does not know the meaning of the term "during this time," as it is vague and subject to multiple interpretations. UPS denies the allegations in Paragraph 56 of the Complaint.

57. Between April and September 2023, Local 891 engaged in a pattern of disrupting Plaintiff's treatment. Rutherford repeatedly led Plaintiff to believe that she was confirming his eligibility for short term disability and obtaining documents for his providers to complete. However, Plaintiff's treatment providers repeatedly denied receiving such requests. After confronting her in July 2023 regarding her repeated misrepresentations, Rutherford failed to respond to Plaintiff's emails. Local 891's dereliction of its obligations at a time when Plaintiff was in greatest need was in retaliation for utilizing FMLA and his prior complaints of discrimination.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 57 of the Complaint. Therefore, UPS denies the allegations in Paragraph 57 of the Complaint.

58. On September 15, 2023 Rutherford informed Plaintiff that he had been denied disability benefits because UPS had not executed the paperwork. Subsequently, a third-party administrator informed Plaintiff the denial was related to a coding issue with either UPS or Local 891. On September 26, 2023, Plaintiff emailed Rutherford, Walters, and Pinkard to rectify the problem. All ignored him in retaliation for utilizing FMLA and his prior complaints of discrimination.

**ANSWER:** UPS denies Plaintiff emailed Brett Walters. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 57 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 58 of the Complaint.

59.     Plaintiff did not receive disability benefits until almost one year after his stroke, in February and April 2024 due to Defendants' retaliatory conduct.

**ANSWER:** Denied.

**AS AND FOR A FIRST CAUSE OF ACTION**
**(DISCRIMINATION IN VIOLATION OF 42 USC 2000e)**
**AGAINST DEFENDANT UPS**

60.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

**ANSWER:** UPS restates and incorporates by reference its answers to Paragraphs 1 through 59 of the Complaint as if fully stated herein.

61.     Defendant UPS's discrimination against Plaintiff concerned one of the activities protected by Title VII of the Civil Rights Act of 1964, 42 USC § 2000e-2.

**ANSWER:** Denied.

62.     Title VII of the Civil Rights Act of 1964 states: "It shall be an unlawful employment practice for an employer – (1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 USC § 2000e-2.

**ANSWER:** The allegations in Paragraph 62 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Title VII. UPS denies any allegation of misconduct or other wrongdoing alleged

in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

63.    Plaintiff is a member of protected classes pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2—namely, Plaintiff is an African American.

**<u>ANSWER:</u>** The allegations in Paragraph 63 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Title VII. Upon information and belief, UPS further admits Plaintiff identifies as African American. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

64.    Plaintiff possessed proper qualifications for Defendant to continue their employment and promote them as evidenced by Defendant's continuation of Plaintiff employment since April 19, 2021. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's discriminatory animus against Plaintiff.

**<u>ANSWER:</u>** Denied.

65.    Defendant and/or its agents engaged in an unlawful practice by discriminating against Plaintiff because of their race. Defendant and/or its agents intended to discriminate against Plaintiff on the basis of their race by subjecting them to disparate treatment in the terms and conditions of their employment. Specifically, Defendant repeatedly used offensive racial commentary in the workplace and targeted Plaintiff for suspension and reprimand in a way that employees outside of Plaintiff's protected class were not. To date, Defendant continues to subject Plaintiff to disparate treatment in the terms and conditions of his employment, causing Plaintiff significant financial hardship, mental anguish, and emotional distress.

**ANSWER:** Denied.

66.     As a direct and proximate result of Defendant UPS's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

**ANSWER:** Denied.

67.     As a direct and proximate result of Defendant UPS's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**ANSWER:** Denied.

**AS AND FOR A SECOND CAUSE OF ACTION**
**(DISCRIMINATION IN VIOLATION OF 42 USC 2000e)**
**AGAINST DEFENDANT LOCAL 891**

68.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

**ANSWER:** UPS restates and incorporates by reference its answers to Paragraphs 1 through 67 of the Complaint as if fully stated herein.

69.     Defendant Local 891's discrimination against Plaintiff concerned one of the activities protected by Title VII of the Civil Rights Act of 1964, 42 USC § 2000e-2(1).

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 69 of the Complaint. Therefore, UPS denies the allegations in Paragraph 69 of the Complaint.

70.     Title VII of the Civil Rights Act of 1964 states: "It shall be an unlawful employment practice for a labor organization to exclude or to expel from its membership, or otherwise to discriminate against, any individual because of his race, color, religion, sex, or national origin." 42 USC § 2000e-2(1).

**ANSWER:** The allegations in Paragraph 70 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Title VII. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

71.     Plaintiff is a member of protected classes pursuant to Title VII of the Civil Rights Act of 1964, Section 2000e-2(1)—namely, Plaintiff is an African American.

**ANSWER:** The allegations in Paragraph 71 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Title VII. Upon information and belief, UPS further admits Plaintiff identifies as African American. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

72.     Defendant Local 891 is a "labor organization" as contemplated Title VII of the Civil Rights Act of 1964, Section 2000e-2(1).

**ANSWER:** The allegations in Paragraph 72 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Title VII. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief

based on the laws alleged. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 72 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 72 of the Complaint.

73.     Defendant Local 891 and/or its agents engaged in an unlawful practice by discriminating against Plaintiff because of their race. Defendant [Local 891] and/or its agents intended to discriminate against Plaintiff on the basis of their race by deterring him from pursuing claims of race discrimination, failing to investigate his claims of racial discrimination, and withdrawing his race discrimination grievance against his wishes. Defendant [Local 891] targeted Plaintiff for reprimand in a way that employees outside of Plaintiff's protected class were not. To date, Defendant [Local 891] continues to subject Plaintiff to disparate treatment in the terms and conditions of his employment, causing Plaintiff significant financial hardship, mental anguish, and emotional distress.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 73 of the Complaint. Therefore, UPS denies the allegations in Paragraph 73 of the Complaint.

74.     Defendant Local 891's actions were motivated by a discriminatory animus.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 74 of the Complaint. Therefore, UPS denies the allegations in Paragraph 74 of the Complaint.

75.     Defendant Local 891's actions directly injured Plaintiff as herein set forth.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 75 of the Complaint. Therefore, UPS denies the allegations in Paragraph 75 of the Complaint.

76.     Defendant Local 891 breached its duty of fair representation.

**ANSWER:** The allegations in Paragraph 75 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS lacks sufficient knowledge to

either admit or deny the allegations in Paragraph 76 of the Complaint. Therefore, UPS denies the allegations in Paragraph 76 of the Complaint.

77.     As a direct and proximate result of Defendant Local 891's unlawful conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-3, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 77 of the Complaint. Therefore, UPS denies the allegations in Paragraph 77 of the Complaint.

78.     As a direct and proximate result of Defendant Local 891's unlawful discriminatory conduct in violation of Title VII of the Civil Rights Act of 1964, Section 2000e-2, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 78 of the Complaint. Therefore, UPS denies the allegations in Paragraph 78 of the Complaint.

**AS AND FOR A THIRD CAUSE OF ACTION**
**(FOR RACIAL DISCRIMINATION UNDER 42 USC §1981)**
**AGAINST DEFENDANT UPS**

79.     Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

**ANSWER:** UPS restates and incorporates by reference its answers to Paragraphs 1 through 78 of the Complaint as if fully stated herein.

80.     The Civil Rights Act of 1866 provides, in pertinent part: "All persons within the

jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 USC §1981.

**ANSWER:** The allegations in Paragraph 80 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Section 1981. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

81.     Plaintiff is a member of a racial minority, identifying as African American.

**ANSWER:** The allegations in Paragraph 81 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Section 1981. Upon information and belief, UPS further admits Plaintiff identifies as African American. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

82.     Defendant UPS had the intent of discriminating against Plaintiff on the basis of his race.

**ANSWER:** Denied.

83.     Defendant UPS treated Plaintiff differently because of his race.

**ANSWER:** Denied.

84.     Defendant UPS's discrimination concerned one of the statute's enumerated

activities, to make and enforce contracts as related to Plaintiff's employment.

**ANSWER:** Denied.

85. As a direct and proximate result of Defendant UPS's unlawful conduct in violation of the Civil Rights Act of 1866, 42 USC §1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

**ANSWER:** Denied.

86. As a direct and proximate result of Defendant UPS's unlawful discriminatory conduct in violation of the Civil Rights Act of 1866, 42 USC §1981, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**ANSWER:** Denied.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (FOR RACIAL DISCRIMINATION UNDER 42 USC §1981)
### AGAINST DEFENDANT LOCAL 891

87. Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

**ANSWER:** UPS restates and incorporates by reference its answers to Paragraphs 1 through 86 of the Complaint as if fully stated herein.

88. The Civil Rights Act of 1866 provides, in pertinent part: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and

shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 USC §1981.

**ANSWER:** The allegations in Paragraph 88 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Section 1981. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

89.    Plaintiff is a member of a racial minority, identifying as African American.

**ANSWER:** The allegations in Paragraph 81 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Section 1981. Upon information and belief, UPS further admits Plaintiff identifies as African American. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

90.    Defendant Local 891 had the intent of discriminating against Plaintiff on the basis of his race.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 90 of the Complaint. Therefore, UPS denies the allegations in Paragraph 90 of the Complaint.

91.    Defendant Local 891 treated Plaintiff differently because of his race.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 91 of the Complaint. Therefore, UPS denies the allegations in Paragraph 91 of the Complaint.

92.    Defendant Local 891's discrimination concerned one of the statute's enumerated activities, to make and enforce contracts as related to Plaintiff's employment.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 92 of the Complaint. Therefore, UPS denies the allegations in Paragraph 92 of the Complaint.

93. As a direct and proximate result of Defendant Local 891's unlawful conduct in violation of the Civil Rights Act of 1866, 42 USC §1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 93 of the Complaint. Therefore, UPS denies the allegations in Paragraph 93 of the Complaint.

94. As a direct and proximate result of Defendant Local 891's unlawful discriminatory conduct in violation of the Civil Rights Act of 1866, 42 USC §1981, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, warranting an award of monetary damages and other relief.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 94 of the Complaint. Therefore, UPS denies the allegations in Paragraph 94 of the Complaint.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (RETALLIATION IN VIOLATION OF 42 USC 2000e)
### AGAINST DEFENDANT UPS

95. Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

**ANSWER:** UPS restates and incorporates by reference its answers to Paragraphs 1 through 94 of the Complaint as if fully stated herein.

96. Title VII of the Civil Rights Act of 1964 prohibits discrimination and retaliation.

**ANSWER:** The allegations in Paragraph 96 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Title VII. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

97.     Title VII of the Civil Rights Act of 1964 provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice..." 42 USC § 2000e-3.

**ANSWER:** The allegations in Paragraph 97 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Title VII. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

98.     Defendant UPS's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

**ANSWER:** Denied.

99.     The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

**ANSWER:** Denied.

100.     Plaintiff engaged in protected activity by complaining about discrimination and retaliation and/or opposing Defendant's unlawful employment practices on February 2, 2022,

verbally to Walters and Holliday and in his written grievance and three complaints of discrimination filed with the EEOC on January 23, 2023, November 27, 2023, January 29, 2024.

**ANSWER:** The allegations in Paragraph 100 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff filed a grievance on February 2, 2022, alleging he had been disciplined for a double-sealed oil filter because of his race and age. UPS further admits Plaintiff filed Charges of Discrimination with the EEOC against UPS, dated January 23, 2023, and November 27, 2023. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 100 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 100 of the Complaint.

101.　Defendant was aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to management, and managers/supervisors addressed said complaints directly with Plaintiff.

**ANSWER:** UPS admits Plaintiff filed a grievance on February 2, 2022. UPS further admits Plaintiff filed Charges of Discrimination with the EEOC against UPS, dated January 23, 2023, and November 27, 2023. UPS denies the remaining allegations in Paragraph 101 of the Complaint.

102.　As fully demonstrated within this Complaint, Defendant engaged in a course of retaliatory and adverse conduct against Plaintiff by targeting Plaintiff for reprimand, suspension, and termination through September 2022, failing to investigate his written grievance alleging discrimination in February 2022, terminating Plaintiff after filing his race discrimination grievance, and, removing Plaintiff's access to health benefits after March 2023.

**ANSWER:** Denied.

103.    Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

**ANSWER:** Denied.

104.    As a direct and proximate result of Defendant UPS's unlawful retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

**ANSWER:** Denied.

105.    As a direct and proximate result of Defendant UPS's unlawful retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**ANSWER:** Denied.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (RETALLIATION IN VIOLATION OF 42 USC 2000e) AGAINST DEFENDANT LOCAL 891

106.    Plaintiff repeats, reiterates, and realleges each and every allegation made in the above paragraphs of this Complaint as if more fully set forth herein at length.

**ANSWER:** UPS restates and incorporates by reference its answers to Paragraphs 1 through 105 of the Complaint as if fully stated herein.

107.    Title VII of the Civil Rights Act of 1964 prohibits discrimination and retaliation.

**ANSWER:** The allegations in Paragraph 107 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Title VII. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

108.     Title VII of the Civil Rights Act of 1964 provides, in pertinent part: "It shall be an unlawful employment practice for an employer to discriminate against any of his employees…because he has opposed any practice made an unlawful employment practice..." 42 USC § 2000e-3.

**ANSWER:** The allegations in Paragraph 108 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Title VII. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

109.     Defendant Local 891's employment practices as alleged at length herein constitute an impermissible act of retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 109 of the Complaint. Therefore, UPS denies the allegations in Paragraph 109 of the Complaint.

110.     The stated reasons for Defendant [Local  891's] conduct were not the true reasons but served as a pretext to conceal Defendant [Local  891's] retaliatory animus against Plaintiff.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 110 of the Complaint. Therefore, UPS denies the allegations in Paragraph 110 of the Complaint.

111.    Plaintiff engaged in protected activity by complaining about discrimination and retaliation and/or opposing Defendant [Local 891's] unlawful employment practices on February 2, 2022, verbally to Walters and in his written grievance and three complaints of discrimination filed with the EEOC on January 23, 2023, November 27, 2023, January 29, 2024.

**ANSWER:** The allegations in Paragraph 111 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff filed a grievance on February 2, 2022, alleging he had been disciplined for a double-sealed oil filter because of his race and age. UPS further admits Plaintiff filed Charges of Discrimination with the EEOC against UPS, dated January 23, 2023, and November 27, 2023. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 111 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 111 of the Complaint.

112.    Defendant [Local 891] was aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to management, and managers/supervisors addressed said complaints directly with Plaintiff.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 112 of the Complaint. Therefore, UPS denies the allegations in Paragraph 112 of the Complaint.

113.    As fully demonstrated within this Complaint, Defendant [Local 891] engaged in a course of retaliatory and adverse conduct against Plaintiff by targeting Plaintiff for reprimand, suspension, and termination through September 2022, specifically failing to investigate Plaintiff's claims of discrimination filed in February 2022, withdrawing Plaintiff's complaint of race

discrimination against Defendant UPS in October 2022 against Plaintiff's wishes, and contributing to the removal of Plaintiff's access to health benefits after March 2023.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 113 of the Complaint. Therefore, UPS denies the allegations in Paragraph 113 of the Complaint.

114. Defendant [Local 891] took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 114 of the Complaint. Therefore, UPS denies the allegations in Paragraph 114 of the Complaint.

115. As a direct and proximate result of Defendant Local 891's unlawful retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits, warranting an award of monetary damages and other relief.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 115 of the Complaint. Therefore, UPS denies the allegations in Paragraph 115 of the Complaint.

116. As a direct and proximate result of Defendant Local 891's unlawful and retaliatory conduct in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.*, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 116 of the Complaint. Therefore, UPS denies the allegations in Paragraph 116 of the Complaint.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (RETALIATION UNDER 42 USC §1981)
### AGAINST DEFENDANT UPS

117.   Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

**ANSWER:** UPS restates and incorporates by reference its answers to Paragraphs 1 through 116 of the Complaint as if fully stated herein.

118.   42 USC §1981 prohibits both discrimination and retaliation.

**ANSWER:** The allegations in Paragraph 118 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Section 1981. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

119.   Defendants' employment practices and union representation as alleged at length herein constitute an impermissible act of retaliation in violation of 42 USC §1981. The stated reasons for Defendants' conduct were not the true reasons but served as a pretext to conceal Defendants' discriminatory animus against Plaintiff.

**ANSWER:** Denied.

120.   Plaintiff engaged in protected activity by complaining about discrimination and retaliation and/or opposing Defendants' unlawful employment practices on February 2, 2022, verbally to Walters and in his written grievance and three complaints of discrimination filed with the EEOC on January 23, 2023, November 27, 2023, January 29, 2024.

**ANSWER:** The allegations in Paragraph 120 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff filed a

grievance on February 2, 2022, alleging he had been disciplined for a double-sealed oil filter because of his race and age. UPS further admits Plaintiff filed Charges of Discrimination with the EEOC against UPS, dated January 23, 2023, and November 27, 2023. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 120 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 120 of the Complaint.

121. Defendants were aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to management, and managers/supervisors addressed said complaints directly with Plaintiff.

**ANSWER:** UPS admits Plaintiff filed a grievance on February 2, 2022. UPS further admits Plaintiff filed Charges of Discrimination with the EEOC against UPS, dated January 23, 2023, and November 27, 2023. UPS denies the remaining allegations in Paragraph 101 of the Complaint.

122. As fully demonstrated within this Complaint, Defendants engaged in a course of retaliatory and adverse conduct against Plaintiff by targeting Plaintiff for reprimand, suspension, and termination through September 2022, terminating Plaintiff after filing his race discrimination grievance, withdrawing Plaintiff's complaint of race discrimination against Defendant UPS in October 2022 against Plaintiff's wishes, removing Plaintiff's access to health benefits after March 2023, and delaying Plaintiff's short term disability application from March 2023 through August 2023.

**ANSWER:** Denied.

123. Defendant took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

**ANSWER:** Denied.

124.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of 42 USC §1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

**ANSWER:** Denied.

125.    As a direct and proximate result of Defendant's unlawful retaliatory conduct in violation of 42 USC §1981, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self- esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**ANSWER:** Denied.

## AS AND FOR A EIGHTH CAUSE OF ACTION
### (RETALIATION UNDER 42 USC §1981)
### AGAINST DEFENDANT LOCAL 891

126.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

**ANSWER:** UPS restates and incorporates by reference its answers to Paragraphs 1 through 125 of the Complaint as if fully stated herein.

127.    42 USC §1981 prohibits both discrimination and retaliation.

**ANSWER:** The allegations in Paragraph 127 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under Section 1981. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

128.    Defendant Local 891's employment practices and union representation as alleged at length herein constitute an impermissible act of retaliation in violation of 42 USC §1981.  The stated reasons for Defendant [Local  891's] conduct were not the true reasons but served as a pretext to conceal Defendant [Local  891's] discriminatory animus against Plaintiff.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 128 of the Complaint. Therefore, UPS denies the allegations in Paragraph 128 of the Complaint.

129.    Plaintiff engaged in protected activity by complaining about discrimination and retaliation and/or opposing Defendants' unlawful employment practices on February 2, 2022, verbally to Walters and in his written grievance and three complaints of discrimination filed with the EEOC on January 23, 2023, November 27, 2023, January 29, 2024.

**ANSWER:** The allegations in Paragraph 129 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff filed a grievance on February 2, 2022, alleging he had been disciplined for a double-sealed oil filter because of his race and age. UPS further admits Plaintiff filed Charges of Discrimination with the EEOC against UPS, dated January 23, 2023, and November 27, 2023. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 129 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 129 of the Complaint.

130.    Defendant [Local  891 was] aware of Plaintiff's engagements in protected activity as Plaintiff complained directly to management, and managers/supervisors addressed said complaints directly with Plaintiff.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 130 of the Complaint. Therefore, UPS denies the allegations in Paragraph 130 of the Complaint.

131.    As fully demonstrated within this Complaint, Defendant [Local 891] engaged in a course of retaliatory and adverse conduct against Plaintiff by targeting Plaintiff for reprimand, suspension, and termination through September 2022, terminating Plaintiff after filing his race discrimination grievance, withdrawing Plaintiff's complaint of race discrimination against Defendant UPS in October 2022 against Plaintiff's wishes, removing Plaintiff's access to health benefits after March 2023, and delaying Plaintiff's short term disability application from March 2023 through August 2023.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 131 of the Complaint. Therefore, UPS denies the allegations in Paragraph 131 of the Complaint.

132.    Defendant [Local 891] took these adverse actions shortly after each of Plaintiff's engagements in protected activity.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 132 of the Complaint. Therefore, UPS denies the allegations in Paragraph 132 of the Complaint.

133.    As a direct and proximate result of Defendant Local 891's unlawful retaliatory conduct in violation of 42 USC §1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation and benefits for which he is entitled to an award of monetary damages and other relief.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 133 of the Complaint. Therefore, UPS denies the allegations in Paragraph 133 of the Complaint.

134.    As a direct and proximate result of Defendant Local 891's unlawful retaliatory conduct in violation of 42 USC §1981, Plaintiff suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety,

loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**ANSWER:** UPS lacks sufficient knowledge to either admit or deny the allegations in Paragraph 134 of the Complaint. Therefore, UPS denies the allegations in Paragraph 134 of the Complaint.

**AS AND FOR A NINTH CAUSE OF ACTION**
**(DISCRIMINATION AND RETALIATION IN VIOLATION OF 29 U.S.C. § 2601)**
**AGAINST DEFENDANTS UPS and LOCAL 891**

135.    Plaintiff repeats and realleges each and every paragraph above as if said paragraphs were more fully set forth herein at length.

**ANSWER:** UPS restates and incorporates by reference its answers to Paragraphs 1 through 134 of the Complaint as if fully stated herein.

136.    Defendant's actions against Plaintiff concerned one of the activities protected by the Family Medical Leave Act, 29 U.S.C. § 2601, *et seq*.

**ANSWER:** The allegations in Paragraph 135 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under the FMLA. UPS denies any allegation of misconduct or other wrongdoing alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

137.    The Family Medical Leave Act states, in pertinent part: "It shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." 29 U.S.C. § 2615(a)(1).

**ANSWER:** The allegations in Paragraph 135 of the Complaint are legal conclusions to which no response is necessary. To the extent a response is necessary, UPS admits Plaintiff purports to bring this action under the FMLA. UPS denies any allegation of misconduct or other wrongdoing

alleged in the Complaint. UPS further denies Plaintiff is entitled to any damages, redress, or other relief based on the laws alleged.

138.    Plaintiff exercised her rights pursuant to the FMLA by requesting intermittent FMLA in order to provide care to his elderly grandmother, which was exacerbated by Defendant's discriminatory and retaliatory actions.

**ANSWER:** UPS admits Plaintiff requested FMLA protected leave through UPS's third-party administrator, on October 26, 2022. UPS specifically denies the allegations in Paragraph 138 of the Complaint, as they relate to UPS. UPS lacks sufficient knowledge to either admit or deny the remaining allegations in Paragraph 139 of the Complaint. Therefore, UPS denies the remaining allegations in Paragraph 139 of the Complaint.

139.    Plaintiff possessed proper qualifications for Defendant to continue their employment. Specifically, Plaintiff enjoyed continued employment with Defendant beginning on April 19, 2021. The stated reasons for Defendant's conduct were not the true reasons but served as a pretext to conceal Defendant's retaliatory animus against Plaintiff.

**ANSWER:** Denied.

140.    Defendants and/or their agents engaged in an unlawful practice and intended to retaliate against Plaintiff by submitting false documents to ensure denial of his FMLA rights and ceasing Plaintiff's medical benefits beginning in March 2023 after he submitted his intermittent FMLA request in October 2022. Defendants also delayed processing of Plaintiff's application for short term disability benefits.

**ANSWER:** Denied.

141.    Defendant unlawfully "interfered with" and "restrained" Plaintiff's FMLA rights by submitting false documents to ensure denial of his FMLA rights and ceasing Plaintiff's medical benefits beginning in March 2023 shortly after he exercised said rights.

**ANSWER:** Denied.

142.    As a direct and proximate result of Defendant's unlawful conduct in violation of FMLA, 29 U.S.C. § 2601, *et seq.*, Plaintiff has suffered and continues to suffer monetary and/or economic damages, including, but not limited to, loss of past and future income, compensation, and benefits for which he is entitled to an award of monetary damages and other relief.

**ANSWER:** Denied.

143.    As a direct and proximate result of Defendant's unlawful discriminatory conduct in violation of the FMLA, 29 U.S.C. § 2601, *et seq.*, Plaintiff has suffered and continues to suffer mental anguish and emotional distress, including but not limited to humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, emotional pain and suffering, for which he is entitled to an award of monetary damages and other relief.

**ANSWER:** Denied.

**WHEREFORE** Plaintiff Derrick Grays demands judgment as follows:

a) A declaratory judgment that actions, conduct, and practices of Defendants complained of herein violate the laws of the United States;

b) An injunction and order permanently restraining Defendants from engaging in such unlawful conduct;

c) An award of damages in the amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all monetary and/or economic harm;

d) An award of damages in an amount to be determined at trial, plus prejudgment interest, to compensate Plaintiff for all non-monetary and/or compensatory harm, including but not limited to, compensation for mental anguish, humiliation embarrassment, stress and anxiety, emotional pain and suffering, and emotional distress;

e) An award of damages for any and all other monetary/non-monetary losses suffered by Plaintiff in an amount to be determined at trial, plus prejudgment interest;

f) An award of punitive damages in an amount to be determined at trial;

g) The costs and disbursements of this action; and

h) Such other and further relief as this Court may deem just, proper, and equitable.

**ANSWER:** In response to the unnumbered Wherefore Clause, including Paragraphs (a) – (h) of the Clause, UPS denies that Plaintiff is entitled to the relief requested in Plaintiff' Complaint or any other type of relief from UPS. UPS denies all remaining allegations contained in these paragraphs.

## **AFFIRMATIVE AND ADDITIONAL DEFENSES**

UPS requests that this Court deny Plaintiff the relief sought and dismiss the Complaint in its entirety. In addition, UPS states the following affirmative and other defenses to Plaintiff's Complaint without assuming the burden of proof on any such defense except as required by applicable law with respect to the particular defense asserted. UPS reserves the right to assert additional affirmative or other defenses and otherwise to supplement this Answer upon discovery of facts or evidence rendering such action appropriate.

## **FIRST DEFENSE**

The Complaint fails, in whole or in part, to allege facts sufficient to state a claim upon

which relief can be granted.

## SECOND DEFENSE

UPS's actions were in good faith, and UPS had reasonable grounds for believing that it was in compliance with the Family and Medical Leave Act.

## THIRD DEFENSE

Plaintiff's claims are barred, in whole or in part, by the applicable statute(s) of limitations.

## FOURTH DEFENSE

Any adverse employment action taken with respect to Plaintiff was based on business necessity.

## FIFTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the doctrine of accord and satisfaction, after-acquired evidence, arbitration and award, assumption of the risk, bad faith, contributory negligence, duress, entire controversy, estoppel, exclusive remedy, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res judicata, recession or mutual abandonment, standing, statue of frauds, statute of limitations, unclean hands, waiver, and/or other principles of equity.

## SIXTH DEFENSE

To the extent that Plaintiff fails to state a claim under any statute, Plaintiff's claims for redress are barred, in whole or in part, because at all times Plaintiff's employment was at will.

## SEVENTH DEFENSE

Plaintiff is not entitled to recover attorneys' fees and/or costs.

## EIGHTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because no action was taken toward Plaintiff because of any protected characteristic, or because he engaged in protected activity, but instead, all actions taken by UPS with respect to Plaintiff were taken in good faith and for legitimate, non-discriminatory, and nonretaliatory reasons.

## NINTH DEFENSE

Plaintiff has failed to allege and did not suffer an adverse employment action or injury that was casually related to any protected activity or protected category.

## TENTH DEFENSE

Plaintiff claims are barred, in whole or in part, on grounds that some or all of the damages claimed by Plaintiff were a result of Plaintiff's own acts, actions, omissions, or negligence.

## ELEVENTH DEFENSE

Plaintiff did not have a serious health condition that made him unable to perform the functions of his job within the meaning of the Family and Medical Leave Act.

## TWELFTH DEFENSE

To the extent that Plaintiff signed a release and/or waiver encompassing claims alleged in the Complaint, or a contractual waiver or agreement, including but not limited to an agreement to arbitrate, contrary to the claims here, such claims are barred by that release, waiver, agreement, and/or award.

## THIRTEENTH DEFENSE

Plaintiff's complaint, and each cause of action, is barred, in whole or in part, due to Plaintiff's failure to mitigate the alleged damages, if any, he claims to have suffered as a result of the allegations in the Complaint. In the alternative, to the extent Plaintiff has mitigated any

alleged damages, UPS is entitled to a set-off for any interim earnings, benefits, or other income.

## FOURTEENTH DEFENSE

Plaintiff, in whole or in part, does not allege facts sufficient to support claims for violations of the laws cited.

## FIFTEENTH DEFENSE

Assuming, *arguendo*, that Plaintiff has stated facts sufficient to support claims for violations of the laws cited, UPS exercised reasonable care to prevent and promptly correct any alleged discrimination, reprisal, retaliation, and/or interference, and Plaintiff unreasonably failed to take advantage of the preventative and corrective opportunities offered by UPS to avoid harm or otherwise. UPS cannot be held liable for any such conduct because UPS neither knew of such conduct, acquiesced in such conduct, nor condoned such conduct.

## SIXTEENTH DEFENSE

Plaintiff's Complaint must be dismissed to the extent he has failed to satisfy and/or fully exhaust his administrative remedies, condition precedent, and/or statutory prerequisites.

## SEVENTEENTH DEFENSE

Plaintiff's Complaint, and each cause of action, is barred, in whole or in part, because the losses, if any, purportedly suffered by Plaintiff, were caused, if at all, by factors unrelated to the conduct or lack thereof on the part of UPS.

## EIGHTEENTH DEFENSE

To the extent Plaintiff's claims are based upon alleged intentional misconduct of specific employees and/or non-employees, UPS cannot be held liable for such conduct based upon theories of *respondeat superior* or vicarious liability or any other manner of imputing liability.

**NINETEENTH DEFENSE**

Plaintiff did not provide UPS with notice of any alleged unlawful behavior and unreasonably failed to take advantage of UPS's preventative or corrective policies for opportunities or avoid harm otherwise.

**TWENTIETH DEFENSE**

Plaintiff's Complaint fails to state a claim for punitive damages.

**TWENTY FIRST DEFENSE**

Plaintiff may not be entitled to recover punitive damages, including because any award of punitive damages would violate the constitutional rights of UPS, including, but not limited to, UPS's rights under the due process clause of the Fifth and Fourteenth Amendments of the United States Constitution.

**TWENTY SECOND DEFENSE**

With respect to Plaintiff's demand for punitive damages, UPS specifically incorporates by reference all standards of limitations regarding the determination and enforceability of punitive damages awards, including but not limited to, those standards of limitations that arose in *BMW of North America v. Gore*, 517 U.S. 559(1996). *Cooper Industries, Inc. v. Leatherman Tool Group, Inc*., 532 U.S. 424 (2001), *State Farm Mutual Automobiles Ins. Co. v. Campbell,* 538 U.S. 408 (2003), and *Philip Morris USA v. Williams*, No. 051256 (U.S. Feb. 20, 2007).

**TWENTY THIRD DEFENSE**

Plaintiff is not entitled to recover damages from UPS for the acts alleged in the Complaint on the grounds that none of UPS's officers, directors, or managing agents committed the alleged acts, nor authorized them, nor ratified them.

## TWENTY FOURTH DEFENSE

There is no causal link, factual or proximate, between UPS's alleged acts or omissions and Plaintiff's alleged injuries or damages.

## TWENTY FIFTH DEFENSE

Without admitting that any duty was or could have been owed to Plaintiff, which is expressly denied, no act or omission of UPS was a direct or proximate cause of any damages alleged to have been sustained by Plaintiff.

## TWENTY SIXTH DEFENSE

Plaintiff's claims are barred, in whole or in part, because Plaintiff is a collective bargaining unit employee, and his claims are preempted by Section 301 of the Labor Management Relations Act and the National Labor Relations Act.

## RESERVATION OF RIGHTS AND ADDITIONAL DEFENSES

Because the Complaint is, in part, couched in conclusory terms, UPS cannot fully anticipate all defenses that might be applicable to this action. Accordingly, UPS reserves the right to assert all affirmative defenses under Fed. R. Civ. P. 8(c) and any other defenses, at law or in equity, that may now exist or in the future be available based on discovery and further factual investigation in this case.

Having fully answered the Complaint and having asserted its affirmative and other defenses, UPS requests that Plaintiff's Complaint be dismissed in its entirety with prejudice, that judgment be entered in favor of UPS, that costs, including attorneys' fees, be awarded to UPS, and that such other and further relief as the Court deems just and proper be granted to UPS.

Dated: March 10, 2025

*/s/ Kristyn L. Hardy*

Kristyn L. Hardy, Esq. (*Pro hac vice*)
**MARTENSON, HASBROUCK & SIMON LLP**
2573 Apple Valley Road NE
Atlanta, Georgia 30319
Tel.: (404) 909-8100
Fax: (404) 909-8120
khardy@martensonlaw.com

and

*/s/ Loden P. Walker*
Loden P. Walker, Esq. (MB No. 105996)
**PHELPS DUNBAR LLP**
1905 Community Bank Way, Suite 200
Flowood, Mississippi 39232
Tel.: (601) 360-9325
Fax: (601 360-9777
loden.walker@phelps.com

*Counsel for United Parcel Service, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on March 10, 2025, I electronically filed this document by using the Court's

CM/ECF system, which will automatically notify all parties or counsel of record.

*/s/ Kristyn L. Hardy*

Kristyn L. Hardy, Esq.
