**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

**DERRICK GRAYS**                                                                      **PLAINTIFF**

**VS.**                                                      **CAUSE NO. 1:24-CV-00217-GHD-DAS**

**UNITED PARCEL SERVICE, INC., and
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS LOCAL 891**                                   **DEFENDANTS**

**MEMORANDUM IN SUPPORT OF THE MOTION TO DISMISS ON BEHALF OF THE
DEFENDANT INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 891**

### I.      INTRODUCTION

Defendant, International Brotherhood of Teamsters Local 891 ("Local 891" or the "Union") files this motion to dismiss the Complaint filed by Plaintiff Derrick Grays ("Grays") for the failure to state claims upon which relief may be granted. Grays asserts claims against the Union under 42 U.S.C. § 1981, 42 U.S.C. § 2000e ("Title VII") and the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"). Plaintiff's claims are neither facially plausible nor above the speculative level required under Rule 12(b)(6) to survive a motion to dismiss.

Grays' allegations stem from a series of interactions between Grays and his Employer, United Parcel Service ("UPS"). Grays filed two grievances through the Union to contest the discipline imposed by UPS and to raise a complaint of racial discrimination. The Union processed these grievances on Grays' behalf to resolution. Though the Union achieved favorable results for its member, Grays claims that Local 891 discouraged Grays from alleging claims of racial discrimination in the grievance(s). While the Union included Grays' discrimination allegations in the suspension grievance, Grays believes that the Union omitted pages that he requested be

1

included in his grievance. For the termination grievance, Grays opines that the Union's Business Manager Jimmy Pinkard ("Pinkard") removed Grays' allegations of racial discrimination from the grievance.

Under Section 1981 and Title VII, Grays' Complaint raises four causes of action against Local 891 for discrimination and retaliation related to the Union's representation.[1] Counts 2, 4, 6, and 8 must be dismissed because Grays fails to allege actionable claims against the Union. Grays' factual allegations do not show that the Union refused to bring a race-related grievance on his behalf or failed to represent Grays in his grievances to the fullest extent. Grays also cannot show that he was subjected to any adverse union action. To sustain an action under §1981 or Title VII for discrimination or retaliation, Grays must initially plead, and ultimately prove, that Local 891 purposely discriminated against him based on race. Under the pleadings standards of *Twombly* and *Iqbal*, Grays cannot merely interject his doubt or suspicion to fill in the gaps.

Grays' Title VII claims must also be dismissed because Grays failed to exhaust his administrative remedies. The EEOC charge against Local 891 fails to address the discrimination and retaliation claims related to the Union's representation of Grays. Instead, the EEOC charge only pertains to a demand for and/or a delay in Grays' benefits. This failure to exhaust is fatal to Grays' Title VII claims. He is now barred by the statutory limit allowing only 180-days to file a charge related to representation allegations because the grievances at issue concluded (in Grays' favor) at the hearing on October 19, 2022. Grays' Title VII claims asserted on January 29, 2024 are not actionable claims against the Union (*See* Doc. 1, ¶6).

---

[1] Count 2: Discrimination in Violation of Title VII (¶¶ 68-78); Count 4: Racial Discrimination under Section 1981 (¶¶87-94); Count 6: Retaliation in Violation of Title VII (¶¶106-116); and Count 8: Retaliation under Section 1981 (¶¶126-143).

Grays' FMLA claim is equally flawed because the Union is not Grays' employer, nor is it alleged to be. (*See* Count 9, ¶¶135-143). Grays cannot maintain an action against his Union, since it is not the party that makes decisions to affirm or deny a request for FMLA leave. Likewise, Grays cannot maintain an action against the Union for benefit decisions, such as the grant or denial of short-term disability, because the Union has no role in benefit decisions. Essentially, Grays names the wrong party in his allegations against the Union concerning both his medical leave and his short-term disability.

## II. STATEMENT OF FACTS AND ALLEGATIONS[2]

Local 891 is a labor organization. (¶¶14, 72).[3] Its primary purpose is to represent its members in collective bargaining for uniform wages and working conditions. As an employee of UPS, Grays is a member of the bargaining unit at UPS represented by Local 891. The Union's Business Manager Jimmy Pinkard ("Pinkard") primarily handled matters related to the Union's representation of Grays. Shop Steward Thomas Holliday ("Holliday") assisted Grays with grievance procedures, as a co-employee of UPS.

On April 19, 2021, UPS employed Grays as a Mechanic First Class at its Columbus facility. (¶17). Grays is an African American man. (¶16). Grays worked under the supervision of UPS Automotive Fleet Supervisor Brett Walters ("Walters"), who is Caucasian. (¶18). According to Grays, Walters "perpetuated a racially-discriminatory work environment … by encouraging racially motivated commentary within the workplace." (¶20). Grays recounts instances when Walters alluded to slavery and made other racially insensitive remarks, such as using the phrase

---

[2] For purposes of this motion only, the allegations made in Grays' Complaint are assumed to be true. Local 891 does not waive its right to contest Grays' factual allegations at all future stages of these proceedings.

[3] The Complaint is cited by paragraph number "¶" without reference to the document number. (Doc. 1).

3

"cracking the whip." (¶¶21-24). On at least one occasion when Grays thanked Walters for lunch, Walters said, "you're an investment, get back in the field." (¶21).

Grays believes Walters imposed harsher consequences on the African American employees he supervised. (¶28). As an example, Grays recounts an occasion when Walters told Grays and another coworker that he "would terminate anyone UPS employee who was dishonest." (¶28). Yet, according to Grays, Walters did not terminate a white driver who Grays believes made a statement Walters knew to be false. (¶28).

On August 19, 2021, Grays alleges that he received a written reprimand for "poor workmanship" related to a leaking seal on a tire. (¶25). According to Grays, Walters refused to withdraw the reprimand even after a white coworker "went to lengths to correct Walters on [Grays'] behalf." (¶25). On October 22, 2021, Grays emailed Walters a request to remove the August reprimand because Grays claimed the leaking seal was not attributable to his work. (¶26). Walters again refused to withdraw the reprimand, responding that Grays needed to wait the nine months for the reprimand to expire. (¶26). In November 2021, Walters cautioned Grays against bringing "negative attention" to himself by continuously confronting him and the Shop Steward ("Holliday") to remove the reprimand. (¶27).

Before the reprimand expired, Grays was accused again of poor workmanship. On January 26, 2022, Grays alleges Walters and Holliday "attempted to suspend" Grays for "allegedly incorrectly double sealing an oil filter on Holliday's truck." (¶29). According to Grays, Walter alluded to "slave-whipping" in his remark, "Brace yourself, this is going to sting a little bit." (¶29). During a meeting, Grays brought the filter to show that the part was defective; and the leak was not attributable to his work. Grays also "formally complained that Walters was targeting him because he [is] African American." (¶29). Walters denied any racial discrimination.

4

The following day, Holliday cautioned Grays against using company time for personal use because UPS may accuse Grays of "stealing time for trying to get paid for defending his claims of race discrimination." (¶30). Days later, Grays encountered the "African American Alternate Shop Steward" while in the restroom. He told Grays that Walters intended to terminate Grays based on his race. Grays responded that he "he had not been terminated but he raised a race discrimination complaint." (¶32). The Shop Steward pointed at his hand and told Grays "to be careful." Grays understood this gesture as "alluding to his race." (¶32).

### A. Allegations Concerning Grays' Grievance to Dispute UPS' Suspension Defending Based on Race Discrimination.

On February 2, 2022, Grays filed a grievance with Holliday. (¶33). This grievance challenged Grays' suspension for poor workmanship. The grievance included Grays' complaints of harassment based on race discrimination in the workplace. (¶33). Holliday allegedly "deterred [Grays] from including many specific details and from dating the grievance." (¶33). When Grays received his copy of the grievance, he noticed missing pages. Holliday agreed that "they would fix" the missing pages. Grays believes that the Union failed to do so. (¶33). Grays claims that Holliday said Grays "would be targeted for termination if he alleged race discrimination." (¶33). After Grays disclosed that "he had videoed his work to prove it satisfactory," Holliday cautioned Grays against using time on the clock to obtain evidence for his grievance because UPS "would accuse [him] of stealing time." (¶33).

A week later, Grays claims that Holliday discouraged Grays from alleging claims of racial discrimination in the grievance. According to Grays, Pinkard suggested to Holliday that, "it would be best if (sic) disregarded the race discrimination grievance." (¶36). Without factual support, Grays opines that neither Local 891 nor UPS investigated his complaints of race discrimination.

5

(¶37). There is no allegation that factually shows the Union removed Grays' complaint of discrimination from the grievance.

Grays repeatedly alleges that he was subject to "direct retaliation" for his complaint of race discrimination; yet, the events alleged relate to the Employer's actions (not the Union's actions). (See e.g., ¶¶34-35, 39, 42, 48-49, 50). Grays asserts that he experienced "increased scrutiny" by his supervisor in retaliation for his complaint of race discrimination. (¶34). On February 3, 2022, Grays claims that Walters "harassed" him by email about tasks assigned to Grays that he should have performed. (¶34). Walters advised Grays that "he was being watched." (¶34). Grays believes Walters locked him out of the timekeeping system to make it appear as though Grays arrived late to work on February 18 and 24, 2022. (¶¶38-39). On April 26, 2022, Grays claims that he needed to leave the workplace because he was "physically threatened" by a white subcontractor. (¶40). Grays claims he reported the incident to Holliday; however, Grays believes nothing was done. (¶40). On August 24, 2022, Walters approved Grays' request to arrive late due to a family emergency. Automotive Manager Timothy Heal ("Heal") asked other employees Grays' whereabouts. Previously, Grays had little to no interaction with Heal. Grays asserts that Heal "applied this increased scrutiny in direct retaliation" resulting from Grays' complaint of race discrimination. (¶42).

B. **Allegations Concerning Grays' Grievance Against UPS' Termination.**

On September 1, 2022, UPS terminated Grays for stealing time, and Walters informed Grays that the allegation resulted from UPS monitoring Grays using security cameras. (¶43). On September 5, 2022, the Union promptly filed and processed another grievance to dispute Grays' termination. (¶44). On October 11, 2022, Grays attended a "Local 891 meeting." UPS was represented by its UPS Labor Representative, Walters, and Heal. Pinkard attended for the Union

6

and to represent Grays. (¶45). In an attempt to settle the grievance, with days remaining before the scheduled grievance hearing, Grays claims he was "pressured" to accept a UPS offer requiring that he resign and receive two paychecks. (¶45). Grays declined the UPS offer. As Grays requested and the procedure requires, the grievance proceeded to a hearing before a "neutral panel both to hear [Grays'] case and investigate [UPS Manager] Heal and Walters." (¶45).

Following the hearing on October 19, 2022, the panel overturned Grays' termination. (¶46). The Union achieved a partially favorable result because Grays was reinstated, effective October 31, 2022, although without backpay.[4] Grays concludes that Pinkard withdrew Grays' complaints of disparate treatment. Grays alleges no factual support for this contention. Grays fails to allege whether he attended the hearing. Without any factual support, Grays opines that Local 891 violated the CBA (without reference to any provision) by withdrawing Grays' complaint of disparate treatment without his consent. (¶46).

### C. Allegations Concerning the FMLA and Short-Term Disability Leave.

On October 31, 2022, the date for Grays to return to work, he failed to appear at work. (¶¶46-47). According to Grays, he requested FMLA leave to care for his ailing grandmother. (¶47). Grays' allegations fail to mention the effective date on which Grays requested FMLA leave and to whom the request was sent. Though the Union is not alleged to be in control of benefit decisions, Grays assumes that Pinkard somehow placed Grays on short-term disability *for one day*, and "in retaliation" for Grays' prior complaints of discrimination. (¶47).

On November 21, 2022, UPS denied Grays' FMLA leave. Grays faults Walters for entering "incorrect dates on [Grays'] paperwork, in retaliation for Grays prior complaints." (¶49). Likely

---

[4] Notably, Grays fails to mention the favorable outcome as to his first grievance contesting Grays' suspension and asserting Grays' complaint of discrimination based on race in violation of Article 36 of the Contract.

7

due to the unapproved absences, UPS repeatedly sent Grays notices of termination. (¶50). During this time, Pinkard also attempted to reach Grays and "constantly called" him. Grays fails to disclose the content of the calls or whether he accepted the calls from Pinkard. Though none of these facts alleged show discrimination or retaliation, Grays concludes that Local 891 "engaged in this harassment as a result of discriminatory animus towards his race and in retaliation for his recent complaints of race discrimination." (¶50). On November 28, 2022, Grays "formally complained" to Pinkard to re-allege his claims of racial discrimination and retaliation while Grays cared for his grandmother. (¶50). After Grays complained, he believes that "Pinkard approved his FMLA leave from October 30, 2022, through March 27, 2023." (¶50). Grays alleges no factual support that either the Union or its officers have authority to approve FMLA leave, since the Union is not Grays' Employer. Nor is the Union alleged to be Grays' Employer in the Complaint.

Likewise, Grays alleges no factual support that the Union controls insurance coverage or makes benefit decisions for UPS employees. In conflict, Grays acknowledges that UPS ended his medical benefits from January 2023 through March 2023. (¶53). Grays, however, complained to Pinkard because on January 10, 2023, he experienced "insurance coverage issues" at the dentist. (¶51). Because Pinkard "never resolved the issue," Grays believes the Union retaliated against him for using FMLA and his prior complaints of discrimination. (¶51).

On March 23, 2023, Grays suffered a stroke and contacted Pinkard through a friend. Pinkard referred Grays' friend to the Benefit Fund, offering the assistance of the Union Insurance Clerk Rhonda Rutherford ("Rutherford"), to inquire about Grays' eligibility for short-term disability. Though Grays could not respond due to being incapacitated by the stroke, Gray also believes Pinkard's alleged "refusal to speak directly" with him shows retaliation. (¶¶54-55).

8

On March 26, 2023, Grays exhausted his FMLA leave. (¶55). On March 27, 2023, the hospital discharged Grays. (¶55). Sometime between April and September 2023, Grays claims that the Union somehow "engaged in a pattern of disrupting Plaintiff's treatment." (¶56). According to Grays, Rutherford led him to believe that "she was confirming his eligibility for short-term disability and obtaining documents for his providers to complete." (¶57). Rutherford failed to respond when Grays confronted her purported "repeated misrepresentations." (¶57).

On September 15, 2023, Rutherford informed Grays that his short-term disability was denied because UPS "had not executed the paperwork." (¶58). Grays also heard from the short-term disability "third-party administrator" who allegedly explained that the denial "was related to a coding issue with either UPS or Local 891." (¶58). Grays sent an email to Rutherford, Walters, and Pinkard demanding that they "rectify the problem." Grays believed everyone ignored him in retaliation for his use of FMLA leave and prior complaints of discrimination. (¶58). According to Grays, he received disability benefits "almost a year after his stroke." He blames the Union and UPS for the delay and believes it was "retaliatory conduct." (¶59).

### III.    STANDARD OF REVIEW

Rule 12(b)(6) allows a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The U.S. Supreme Court in *Twomby* and *Iqbal* require a "plausibility" standard to the pleadings. Grounds must be more than mere assertions of labels, formulas, and conclusions. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the Complaint's allegations are true." *Id*. at 545. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

9

inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In *Iqbal*, the Supreme Court provides a two-prong approach to determine whether a Complaint states a plausible claim for relief. *Id*. at 680 (referring to the *Twombly* decision). First, the Court must identify pleadings that are conclusory and thus not entitled to the assumption of truth. *Id*. Second, for those pleadings that are more than merely conclusory, the Court assumes veracity of those well-pleaded factual allegations and determines "whether they plausibly give rise to an entitlement to relief." *Id*. Critically, *Iqbal* instructs that "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678.

Grays' Complaint fails the plausibility test under *Twombly* and *Iqbal* by inserting speculation and otherwise conclusory allegations that the Union is responsible for nearly all the bad outcomes that Grays experienced. Grays allegations show that the Union processed Grays' grievances to a hearing. Grays cannot plausibly show that the Union, who is not Grays' employer, affirmed or denied his FMLA leave. Further, Grays cannot plausibly show that the Union controls any benefit decision because the Union is a wholly separate entity from the Benefit Fund(s). Grays claims against the Union are not facially plausible and do not rise above the speculative level required under Rule 12(b)(6) to survive a motion to dismiss.

## IV. LAW AND ARGUMENT

### A. Grays Failed to Exhaust His Administrative Remedies Under Title VII. (Counts 2 and 6).

Before seeking judicial relief under Title VII, Grays must exhaust his administrative remedies by filing a Charge of Discrimination with the EEOC within 180 days of the alleged unlawful employment practice. *Davis v. Fort Bend Cnty.*, 893 F.3d 300 (5th Cir. 2018) (citing 42 U.S.C. § 2000e-5(e)(1), *aff'd sub nom.*, *Fort Bend Cnty., Texas v. Davis*, 587 U.S. 541 (2019).

While Grays asserts that he filed a charge of Discrimination with the EEOC against the Union, his EEOC charge alleges retaliation.[5] (*See,* Exhibit 1 to Local 891's Motion to Dismiss, January 29, 2024 EEOC Charge filed by Grays). Further, Grays' charge against the Union pertains only to his medical leave and denial of benefits.

In his Complaint, Grays alleges a discrimination claim under Title VII. (Count 2, ¶¶68-78). Grays asserts that Local 891 breached its duty of fair representation by deterring him from pursuing claims of race discrimination, failing to investigate, and withdrawing his race discrimination grievance.[6] *Id.* Grays also alleges a retaliation claim using the same allegations. (Count 6, ¶¶106-116). Grays further asserts that the Union engaged in retaliatory conduct by targeting him for reprimand, suspension, and termination.

Critically, Grays' EEOC charge does not raise a discrimination claim. His charge does not allege a retaliation claim related to the Union's representation of him. According to the Complaint, the timeline of the Union's representation is as follows:

January 26, 2022     Walters and Holliday "attempted to suspend" Grays. (¶29)

---

[5] Grays Complaint indicates that he filed three charges with the EEOC. Two charges were filed against UPS on January 23, 2023 and November 27, 2023 (¶4-5). He also filed one charge against Local 891 on January 29, 2024 (¶9). Grays also states that he received three Right to Sue letters, dated September 18, 2024 from the EEOC. (¶8). Grays also avers that his first EEOC charge, dated January 23, 2023 alleged discrimination "against both Defendants." (¶52). However, this assertion is inconsistent with Grays' Procedural History (¶¶4-9) and the language of his first EEOC Charge, filed only against UPS. (*See* Exhibit 1)

[6] While Grays does not specifically assert a claim under §301 of the Labor Management Relations Act, 29 U.S.C. §185, any such claim is untimely. To the extent that Grays is attempting to assert a Duty of Fair Representation claim, this claim relating to events occurring in 2022 is time-barred. The Fifth Circuit found that the applicable six-month limitation period begins to run when the employee "either knew or should have known" of the Union's decision not to pursue a grievance or breaches its duty of fair representation "rather than of its manifestations." *Barrett v. Ebasco Constructors, Inc.*, 868 F.2d 170, 171 (5th Cir. 1989)(citing *Farr v. H.K. Porter Co.*, 727 F.2d 502, 505 (5th Cir. 1984)). Also see, *Richardson v. United Steelworkers of Am.*, 864 F.2d 1162, 1164 (5th Cir. 1989); *Miranda v. Nat'l Postal Mail*, 219 F. App'x 340, 345 (5th Cir. 2007) (citing *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 163 (1983).

| | |
|---|---|
| February 2, 2022 | Grays filed a grievance with Holliday complaining of harassment based upon race discrimination in the workplace. (¶33) |
| September 1, 2022 | UPS terminated Grays for allegedly stealing time. (¶43) |
| September 15, 2022 | Grays filed a grievance disputing his termination. (¶43) |
| October 19, 2022 | After a hearing, the Panel overturns Grays termination (and suspension). (¶46) |

On January 29, 2024, when Grays filed this EEOC charge against the Union, he was beyond the statutory 180-days deadline to allege an unfair employment practice against the Union over the Union's handling of his 2022 grievances. At most, Grays had 180 days from the October 19, 2022, hearing date to file a charge for representational matters. Counts 2 and 6 under Title VII must be dismissed, *with prejudice,* because Grays failed to timely file a charge to raise these Title VII claims.

**B. Grays Complaint Fails to Allege Plausible Claims under Section 1981 (or Title VII).[7]**

Section 1981 guarantees an equal right to make and enforce contracts. The U.S. Supreme Court found that to bring a §1981 action, a "plaintiff must initially plead and ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 589 U.S. 327, 341 (2020). To establish *intent* to discriminate requires more than awareness of consequences or volition, or just "some role." *Id.* at 327; *Pers. Adm'r of Massachusetts v. Feeney*, 442 U.S. 256, 279 (1979). Instead, the plaintiff must show that the defendant acted with discriminatory purpose. This means that the plaintiff must *plead* and show that the "injury would not have occurred 'but for' the defendant's unlawful conduct." *Id., supra* at

---

[7] The same standard applies to Title VII claims. While Grays' Title VII claims in discrimination and retaliation should be dismissed for the failure to exhaust; this argument also extends to Grays' Title VII Claims, Counts 2 and 6.

12

329. This causation requires the "decisionmaker's undertaking a course of action 'because of,' not merely 'in spite of,' [the action's] adverse effects upon an identifiable group." *Iqbal* at 663 (citing *Feeney* at 279.

Discrimination may be alleged based on direct or circumstantial (i.e., indirect) evidence. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). The *McDonnell Douglas* framework is an evidentiary standard which need not be satisfied at the pleading stage because it is the plausibility of the allegations that is at issue in a motion to dismiss. The Fifth Circuit has noted that the *McDonnell Douglas* framework demonstrates the types of factual allegations sufficient to support a plausible inference of discriminatory intent. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 387 (5th Cir. 2017). A plausible claim against the Union must show and ultimately prove that the Union "purposefully discriminated against him because of his race." *Wesley v. Gen. Drivers, Warehousemen & Helpers Loc. 745*, 660 F.3d 211, 216 (5th Cir. 2011). At the outset, Grays has not plausibly alleged intent and lacks the elements of a plausible claim in either discrimination or retaliation.

1. **<u>Discrimination (Count 4)</u>**

In cases involving alleged discrimination by a union, the plaintiff must plausibly allege (1) the plaintiff is a member of a protected class; (2) the plaintiff was subjected to "adverse union action;" and (3) the plaintiff was treated less favorably than employees of other races. *Id.* at 215 (citing *Stalcup v. Commc'n Workers of Am.,* 44 Fed. Appx. 654 (5th Cir.2002)).

Here, Grays cannot demonstrate that purposeful discrimination based on race under §1981 (or Title VII) affected the Union's representation of him. Local 891 processed Grays' grievances to the fullest extent possible under the CBA. Local 891 brought both grievances to a hearing, and both resolved favorably for Grays. Grays alleges that he filed a grievance through the Shop

13

Steward that included a complaint of "harassment based upon race and age discrimination in his workplace" under the nondiscrimination provisions of the CBA. (¶33). When Grays complained that his copy of the grievance was missing pages, the Shop Steward agreed that "they would fix it." Grays' belief that the missing pages were not restored is based solely on suspicion and conjecture. His claim that the Union did not investigate his grievance is also conjecture. Though Grays alleges he was discouraged from alleging claims of racial discrimination in the grievance, he cannot show any factual support that the Union refused to file this grievance or failed to raise racial discrimination in the grievance (when it did). Grays only brings suspicion and doubt.

In addition, Grays' allegations show the Shop Steward advised Grays, who was already under discipline, against using the Company's time for personal matters, such as collecting evidence to support his grievance. Incidentally, Walters also warned Grays that he was being watched or monitored by security cameras. (¶¶34, 43). In fact, according to the Complaint, the Shop Steward's concern proved correct, since UPS eventually terminated Grays for "stealing time," based on conduct the Company saw on its security cameras. (*See* ¶¶33, 43). Grays also filed a grievance to challenge his termination. However, unlike the grievance disputing his suspension, there are no factual allegations that Grays affirmatively sought that the grievance challenging his termination include a disparate treatment claim.[8] Grays merely opines that his disparate treatment claim was withdrawn in violation of the CBA. Grays fails to allege a reference in the CBA for a purported violation. Grays

---

[8] Without requesting that a grievance be filed, the member has not brought the complained of conduct to the attention of the Union. *See, e.g., E.E.O.C. v. Pipefitters Ass'n Loc. Union 597*, 334 F.3d 656 (7th Cir. 2003) (holding that the union has no affirmative duty to prevent racial harassment or other forms of discrimination at the jobsite); *Thorn v. Amalgamated Transit Union*, 305 F.3d 826, 832 (8th Cir. 2002) (finding that the union had no duty to remedy sexual harassment when the member did not ask the union to file a grievance); *Mechmet v. Four Seasons Hotels, Ltd.*, 825 F.2d 1173, 1178 (7th Cir.1987) ("[I]f a worker doesn't even ask his union to press a grievance for him he can hardly complain that it has failed to represent him.").

attempts to make an issue concerning a "certified letter of the results" that is provided to white coworkers.

Given the positive outcome following the grievance hearing, Grays has not shown that he was treated less favorably by the Union as compared to any other employee outside the protected class. None of these allegations, assuming they are true, show the Union's purposeful discrimination or that Grays was subjected to any adverse union action. To the contrary, the Union achieved success in defending Grays' grievances for suspension and termination. Unlike the suspension grievance, the Union was unable to achieve back pay for Grays' termination; however, UPS allowed him to return to work. It was Grays' decision not to return. Grays lacks the facts to plead a Section 1981 (or Title VII) claim against the Union for intentionally discriminating against its member based on race. These claims in Counts 2 and 4 should be dismissed.

## 2. **Retaliation (Count 8).**

The framework to plead a plausible §1981 (or Title VII) claim for retaliation requires that: (1) the plaintiff engaged in protected activity, (2) an adverse action followed, and (3) there exists a causal connection between the protected activity and adverse action. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 390 (5th Cir. 2017) (citing *Foley v. Univ. of Houston Sys.*, 355 F.3d 333, 339 (5th Cir. 2003)); (See also, *Barrow v. New Orleans S.S. Ass'n*, 10 F.3d 292, 298 (5th Cir. 1994) (in the context of protected activity by the ADEA and Title VII).

Grays fails to establish that he engaged in protected activity relative to filing the EEOC charge(s). Grays filed two charges of discrimination against UPS, dated January 23, 2023, and November 27, 2023. (¶¶4-5). In fact, no charge was filed against the Union or provided to the Union, until the much later date of January 29, 2024. Therefore, the Complaint alleges no protected activity relative to the Union, as the EEOC charges were filed against the Employer. The

15

allegations in the Complaint occurred earlier, 15 months before Grays filed the EEOC charge against the Union. The EEOC charge against the Union concerns only his disability benefits and FMLA leave. The Court may likewise reject any claims alleged in the Complaint against the Union that Grays' request for FMLA leave constitutes protected activity under §1981 (or Title VII). *See Longoria v. Via Metro. Transit*, No. SA-21-CV-01171-JKP, 2022 WL 1445396, at *9 (W.D. Tex. May 6, 2022) ("taking FMLA leave is not a protected activity under Title VII") (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). Without factual allegations supporting his claim that he engaged in protected activity under Section 1981, Grays' retaliation claim is nothing more than "threadbare recital" of a cause of action, which cannot survive a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Further, Grays' allegations fail to show any causal connection between the Union's representation and any adverse action. The Union successfully resolved both grievances for Grays. There is no adverse Union action shown or taken against Grays. Similarly, there is no adverse Union action for the denial of Grays' short-term disability benefits. Instead, the Union assisted Grays in his application for short-term disability, by referring him to its Clerk to assist him in the paperwork process. However, the Union did not make any decisions, nor is it alleged that the Union made decisions, as to Grays' benefit eligibility. Since the Union is not the decisionmaker as to benefit decisions, there cannot be any causal connection between the denial of benefits and Grays' complaints against UPS, nor is a connection alleged. The allegations of the Complaint conflate the Benefit Fund with the Union and Pinkard. None of these allegations, taken as true, would lead to an inference of discrimination or retaliation by the Union. Therefore, all allegations in Count 8 should be dismissed as to the Union, *with prejudice*.

16

**C. Grays Has No Actionable Claim Against the Union for the Employer's Denial of His Requested FMLA Leave. (Count 9)**

Grays cannot assert an action against the Union under the Family and Medical Leave Act ("FMLA") because the Union is not his *employer*, nor is the Union alleged to be Grays' employer. FMLA provides that "[i]t shall be unlawful for *any employer* to interfere with, restrain, or deny the exercise" an employee's right to use leave pursuant to FMLA. 29 U.S.C. §2615(a)(1). It is also unlawful for an *employer* to retaliate against an employee for using leave under FMLA. 29 U.S.C. §2615(a)(2). In the Complaint's Ninth Cause of Action, Grays lumps both UPS and Local 891 together as "Defendants" at times referring to a single yet undisclosed "Defendant." (¶¶138-143) These types of allegations should fail under Rule 12(b)(6) or Rule 8 due to their lack of specificity. Nevertheless, Grays acknowledges that UPS (not the Union) denied Grays' FMLA leave because Grays' supervisor entered incorrect dates on Grays' paperwork. (¶49). Grays cannot plausibly allege a claim against the Union under FMLA because the Union is not his employer. For these reasons, the Union must be dismissed, *with prejudice,* from Count 9.

**D. The Union is Not the Responsible Party for Benefit Determinations (Counts 6, 8, and 9).**

Just as the Union is not in control over employer decisions as to FMLA leave, the Union also has no control over benefit determinations, such as the approval or denial of short-term disability benefits. Benefit decisions, including appeals, are determined by an entirely different entity, the Health and Welfare Benefit Fund. Local 891 is not the Benefit Fund, nor is it alleged to be. Grays' allegations show that the Union referred him to speak with Rutherford, a "Local 891 Pension and Insurance Clerk." (¶54). In pertinent part, Count 6 includes the allegation that the Union engaged in retaliatory conduct by "contributing to the removal of Plaintiff's access to health benefits after March 2023." (¶113) Similarly, Count 8 alleges, in part, that the Union removed

Grays' access to health benefits and delayed Grays' short-term disability application from March 2023 to August 2023. (¶131). None of Grays' allegations factually support these claims.

Like the FMLA leave, the denial of Grays' short-term disability application is *not* an adverse action caused by the Union, nor could it be. Grays has not and cannot plausibly allege a cause of action against the Union for the denial or delay of short-term disability benefits because the Union is not the Benefit Fund, the legal entity making benefit eligibility determinations. Grays named the wrong party. The allegations clearly show that Grays was put in touch with the Benefit Fund; and at most, the Union Insurance Clerk Rutherford acted to assist Grays in his dealings with the Fund and its third-party administrator. Therefore, the allegations related to Grays' disability benefits asserted against the Union must be dismissed, *with prejudice*.

## V. CONCLUSION

For these reasons, Defendant Local 891 respectfully requests this Honorable Court grant this Motion and dismiss Local 891 from Plaintiff's Complaint, *with prejudice*.[9]

---

[9] The Counts related to Local 891 are Counts 2, 4, 6, 8, and 9. Counts 1, 3, 5, and 7 relate only to Defendant UPS and are not the subject of this Motion.

Respectfully submitted,

**Defendant, International Brotherhood of Teamsters Local 891**

/s/ *Julie Richard Spencer*
Julie Richard Spencer (LA Bar No. 20340)*
Kevin Mason Smith (LA Bar No. 31394)*
Paula M. Bruner (LA Bar No. 30417)*
*Admitted Pro Hac Vice*
ROBEIN, URANN,
SPENCER, PICARD & CANGEMI, APLC
2540 Severn Avenue, Suite 400
Metairie, LA 70002
Phone: (504) 885-9994
Fax:    (504) 885-9969
Email: jrichard@ruspclaw.com
Email: kmason@ruspclaw.com
Email: pbruner@ruspclaw.com

**Local Counsel:**

/s/ *William H. Hussey*
William H. Hussey (MS Bar No. 102322)
Charles Best (MS Bar No. 106451)
Maxey Wann PLLC
401 East Capitol Street, Suite 200
Jackson, Mississippi 39207-3977
Telephone: (601) 355-8855
Facsimile: (601) 355-8881
Email: william@maxeywann.com
Email: charles@maxeywann.com

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing Memorandum in Support of the Motion to Dismiss on behalf of the Defendant International Brotherhood of Teamsters Local 891 was filed and served on all counsel of record via CM/ECF this the 20th day of March, 2025.

By:   */s/Julie Richard Spencer*
      Julie Richard Spencer