**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF MISSISSIPPI**
-------------------------------------------------------------------------x
DERRICK GRAYS,

                              Plaintiffs,

             -against-

UNITED PARCEL SERVICE, INC., INTERNATIONAL
BROTHERHOOD OF TEAMSTERS LOCAL 891,

                            Defendant.
-------------------------------------------------------------------------x

Case No.: 1:24-cv-00217-GHD-DAS


**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S**
<u>**MOTION TO DISMISS**</u>


Michael P. Hilferty
Tuba J. Farooqui
White, Rose & Hilferty, P.C.
757 Third Avenue, 20th Floor
New York, NY 10017
Tel: (917) 633 5760
Tel: (917) 565-8763
Attorneys for Plaintiff

1

# **Table of Contents**

I.    PRELIMINARY STATEMENT ............................................................................ 5

II.   STATEMENT OF MATERIAL FACTS ........................................................... 5

III.  STANDARD OF REVIEW.............................................................................. 10

IV.  LAW AND ARGUMENT ................................................................................11

    A.   GRAYS EXHAUSTED HIS ADMINISTRATIVE REMEDIES UNDER TITLE VII. (COUNTS 2 AND 6)..............................................................................................................11

    B.   GRAYS COMPLAINT ALLEGES PLAUSIBLE CLAIMS OF DISCRIMINATION AND RETALIATION UNDER TITLE V11 AND §1981. ......................................................... 15

        1.   *Dicrimination (Count 2 and 4)* ..................................................................... 15

        2.   *Retaliation (Count 6 and 8)* ......................................................................... 18

    C.   GRAYS HAS AN ACTIONABLE CLAIM AGAINST LOCAL 891 FOR DENIAL OF HIS REQUESTED FMLA LEAVE AND SHORT-TERM DISABILITY BENEFITS (COUNT 9)................ 19

V.    CONCLUSION ............................................................................................. 20

## C̲A̲S̲E̲S̲

*Arista Records, LLC v. Doe 3*, 604 F.3d 110 (2d Cir. 2010) --------------------------------------- 9

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ----------------------------------------------------------------- 9

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct, 1955 (2007) ------------------------------------------- 9

*Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858 (5th Cir.1993) -------------------------------14

*Brown*, 989 F.2d 858, 861-------------------------------------------------------------------------------15

*Bugg v. International Union of Allied Industrial Workers of America, Local 507*, 674 F.2d 595

    (7th Cir. 1982) ----------------------------------------------------------------------------------------15

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)--------------------------------------17

*Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162 (5th Cir. 2018) -------------------------11

*Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082 (5th Cir. 1994)------------------------------------------15

*DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151 (1983)------------------------------------------18

*Edwards v. Coldwell Banker Real Estate Corp.*, 2006 WL 2404718 (N.D. Miss. Aug. 18, 2006)10

*E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475 (5th Cir. 2014)-----------------------------------------------11

*Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130*, U. A., 657 F.2d 890, (7th Cir.

    1981)---------------------------------------------------------------------------------------------------12

*Eggleston,130, U. A.*, 657 F.2d 890, 905 ------------------------------------------------------------------13

*Evans v. City of Houston*, 246 F.3d 344 (5th Cir. 2001) -----------------------------------------------17

*Glus v. G.C. Murphy Co.*, 562 F.2d 880 (3d Cir. 1977)------------------------------------------------12

*Glus*, 562 F.2d 880, 888-------------------------------------------------------------------------------------13

*Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-69, 96 L. Ed. 2d 572 S. Ct. 2617 (1987) ------15

*January v. City of Huntsville*, 74 F.4th 646 (5th Cir. 2023) -------------------------------------------17

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) ---------------------------------------------15

*Outley v. Luke & Assocs., Inc.*, 840 F.3d 212 (5th Cir. 2016)----------------------------------------16

*Pacheco*, 48 F.3d 783, 788------------------------------------------------------------------------------13

*Pacheco v. Mineta,* 448 F.3d 783 (5th Cir. 2006) --------------------------------------------------10

*Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940 (5th Cir. 2015)--------16

*Portis v. First Nat'l Bank*, 34 F.3d 325 (5th Cir. 1994) --------------------------------------------15

*Preston v. Tex. Dep't of Family & Protective Servs.*, 222 F. App'x 353 (5th Cir. 2007) ----------10

*Sanchez v. Standard Brands, Incorporated,* 431 F.2d 455 (5th Cir.1970)-------------------------- *11*

*Simbaki, Ltd.*, 767 F.3d 475, 481 ------------------------------------------------------------------------13

*Stalcup v. Commc'n Workers of Am.*, 44 F. App'x 654 (5th Cir. 2002) ------------------------------15

*Stalcup*, 44 F. App'x 654, 654------------------------------------------------------------------------ 15, 16

*Vaca v. Sipes*, 386 U.S. 171 (1967) ----------------------------------------------------------------------17

*Vaca*, 386 U.S. 171------------------------------------------------------------------------------------------18

*Wallace v. Methodist Hosp. Sys*., 271 F.3d 212 (5th Cir. 2001) --------------------------------------14

*Way v. Mueller Brass Co*., 840 F.2d 303 (5th Cir.1988)------------------------------------------------11

Rules

Fed. R. Civ. P §12(b)(6)--------------------------------------------------------------------------------- 9

## **FEDERAL STATUTES**

42 U.S.C. § 1981;

Title VII of the Civil Rights Act of 1964;

29 C.F.R. § 1601.12(b).

## I.     <u>PRELIMINARY STATEMENT</u>

Plaintiff, DERRICK GRAYS, ("Mr. Grays" or "Plaintiff") by and through his attorneys, White, Rose & Hilferty, P.C., respectfully submits this Memorandum of Law in Opposition to Defendant International Brotherhood of Teamsters Local 891's ("Teamsters Local 891" or "Defendant") Motion to Dismiss Plaintiff's Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Local 891's Motion to Dismiss pursuant to Rule 12(b)(6) must be denied in its entirety as a matter of law because Plaintiff's Complaint sufficiently alleged facts to support his claims.

## II.     <u>STATEMENT OF MATERIAL FACTS</u>

Plaintiff is a 44-year-old African American male. *See,* Plaintiff's Complaint ("Compl.") at ¶16. On April 19, 2021, United Parcel Service ("UPS") hired Plaintiff as a Mechanic First Class at its Columbus facility. *Id.* at ¶17. Plaintiff's supervisor for the entirety of his employment with UPS has been UPS Automotive Fleet Supervisor Brett Walters, a Caucasian male. *Id.* at ¶20. Walters perpetuated a racially-discriminatory work environment during Plaintiff's time working for UPS by encouraging racially motivated commentary within the workplace. *Id.* at ¶20.

On August 19, 2021, Plaintiff received a written warning for poor workmanship, arising from a leaking seal on one of the tires. *Id.* at ¶25. However, Mechanic First Class Stacy Quinn evaluated the leak and determined it was not Plaintiff's fault. *Id.* at ¶25. He went to lengths to correct Walters on Plaintiff's behalf. *Id.* at ¶25. Walters disregarded the clear evidence and still refused to withdraw the warning. Quinn—a Caucasian—disclosed to Plaintiff that he never received any oral or written reprimands for the exact same malfunctions. *Id.* at ¶25.

On October 22, 2021, Plaintiff emailed Walters requesting he remove the written warning because it had been proven the issue was not attributable to his work. *Id.* at ¶26. Walters simply

responded Plaintiff would have to wait nine months for the reprimand to expire, wrongfully placing blame on Plaintiff at fault for the vehicle leak. *Id.* at ¶26. On November 2, 2021, Walters warned Plaintiff that he was bringing negative attention to himself by confronting Walters and Shop Steward Thomas Holliday about the August reprimand. *Id.* at ¶27. Walters established a system of harsher consequences for African American employees. *Id.* at ¶28.

On January 26, 2022, Walters and Holliday attempted to suspend Plaintiff for allegedly incorrectly double sealing an oil filter on Holliday's truck. *Id.* at ¶29. Before delivering the news, Walters made another allusion to slave-whipping: "Brace yourself, this is going to sting a little bit." *Id.* at ¶29. During this meeting, Plaintiff formally complained that Walters was targeting him because he was African American. *Id.* at ¶29. He brought the filter to show Walters that the part itself was faulty, not his work. *Id.* at ¶29. Walters denied any discrimination. *Id.* at ¶29. He confiscated the filter, abruptly left the meeting, and did not return to the facility for several months. *Id.* at ¶29. The following day, Holliday warned Plaintiff that he would be accused of stealing time for trying to get paid for defending his claims of race discrimination. *Id.* at ¶30.

Several days later, African American Alternate Shop Steward Tony Henry encountered Plaintiff in the restroom. *Id.* at ¶32. Henry advised that Walters intended to terminate Plaintiff because he was black. *Id.* at ¶32. Plaintiff responded he had not been terminated but he raised a race discrimination complaint. *Id.* at ¶32. Henry pointed to his hand (alluding to his race) and told Plaintiff to be careful. *Id.* at ¶32.

On February 2, 2022, Plaintiff filed a grievance with Shop Steward Thomas Holliday complaining of harassment based upon race and age discrimination in his workplace, specifying a violation under Article 36 of the Collective Bargaining Agreement ("CBA"), Nondiscrimination. *Id.* at ¶33. Holliday deterred Plaintiff from including many specific details and from dating the

grievance. *Id.* at ¶33. After Plaintiff realized his copy of the grievance was missing pages, Holliday indicated they would fix it but failed to do so. *Id.* at ¶33. Holliday warned Plaintiff that he would be targeted for termination if he alleged race discrimination. *Id.* at ¶33. When Plaintiff revealed that he had videoed his work to prove it satisfactory, Holliday warned Plaintiff that UPS would accuse Plaintiff of stealing time if he spent time on the clock working to prove his case for racial discrimination. *Id.* at ¶33.

On February 9, 2022, Holliday discouraged Plaintiff from alleging claims of racial discrimination. *Id.* at ¶36. Holliday stated that Local 891 Business Manager Jimmy Pinkard indicated it would be best if disregarded the race discrimination grievance. *Id.* at ¶36. Neither Local 891 nor UPS initiated an investigation as a result of Plaintiff's grievance, in violation of both UPS' policies and procedures and the CBA. *Id.* at ¶37.

On April 26, 2022, a worker for Caucasian male subcontractor Tim Moody physically threatened Plaintiff, requiring Plaintiff to leave the immediate area. *Id.* at ¶40. On September 1, 2022, UPS terminated Plaintiff for allegedly stealing time. *Id.* at ¶40. No evidence existed to support this termination. *Id.* at ¶40. The next day Plaintiff reported the incident to Holliday, who disregarded it. *Id.* at ¶40.

On September 1, 2022, UPS terminated Plaintiff for allegedly stealing time. *Id.* at ¶43. No evidence existed to support this termination. *Id.* at ¶43. Walters attempted to evade responsibility for terminating Plaintiff by falsely assuring him that he would be rehired if he resigned. *Id.* at ¶43. When Plaintiff refused, Walters informed him that security was monitoring him. *Id.* at ¶43. Heal and Walters escorted Plaintiff off the premises. *Id.* at ¶43. Plaintiff filed a grievance disputing his termination the next day. *Id.* at ¶44.

At a Local 891 meeting on October 11, 2022, UPS Labor Representative Daniel Greer, Walters, Heal, and Pinkard confronted Plaintiff about the grievance with only three days' notice and without providing him with his time records. *Id.* at ¶45. They pressured Plaintiff to resign in lieu of termination in exchange for two paychecks. *Id.* at ¶45. Plaintiff refused and requested a neutral panel both hear his case and investigate Heal and Walters. *Id.* at ¶45.

On October 19, 2022, the National Panel overturned Plaintiff's termination following a hearing. *Id.* at ¶46. It reinstated Plaintiff effective October 31, 2022, although without backpay. *Id.* at ¶46. Pinkard withdrew Plaintiff's complaints of disparate treatment without Plaintiff's consent, in violation of the CBA. Local 891 also failed to provide the certified letter of the results that it provided his similarly-situated white colleagues, in violation of the CBA. *Id.* at ¶46. Plaintiff's return to work was scheduled. *Id.* at ¶46.

On October 25, 2022, Plaintiff requested FMLA to care for his ailing grandmother. *Id.* at ¶47. On October 31, 2022, Pinkard placed Plaintiff on short term disability for a day in retaliation for his pending FMLA request, and his prior complaints of discrimination. *Id.* at ¶48. On November 21, 2022, UPS' carrier denied Plaintiff FMLA because Walters entered incorrect dates on Plaintiff's paperwork, in retaliation for his prior complaints. *Id.* at ¶49.

During this period, Pinkard also constantly called Plaintiff. Both UPS and Local 891 engaged in this harassment as a result of discriminatory animus towards his race and in retaliation for his recent complaints of race discrimination. *Id.* at ¶50. On November 28, 2022, Plaintiff formally complained to Pinkard, reiterating his claims of racial discrimination and retaliation while he was taking care of his sick grandmother. *Id.* at ¶50. The following day, Pinkard approved Plaintiff for FMLA from October 30, 2022, through March 27, 2023 and instructed him to disregard the termination notices. *Id.* at ¶50.

On January 10, 2023, Plaintiff experienced insurance coverage issues at the dentist. *Id.* at ¶51. He escalated the issue to Pinkard. Pinkard never resolved the issue, in retaliation for utilizing FMLA and his prior complaints of discrimination. *Id.* at ¶51.

On January 23, 2023, Plaintiff filed his first EEOC charge, alleging discrimination against both Defendants. *Id.* at ¶52. Neither Pinkard nor Walters have interacted with Plaintiff since filing. *Id.* at ¶52. Pinkard has actively ignored Plaintiff's calls. *Id.* at ¶52.

On March 23, 2023, Plaintiff suffered from a stroke. *Id.* at ¶54. The following day, Plaintiff's friend notified Pinkard. *Id.* at ¶54. Pinkard referred this friend to Local 891's Pension and Insurance Clerk Rhonda Rutherford, suggesting Plaintiff should see if he was eligible for short term disability, and to Walters. *Id.* at ¶54. Pinkard's refusal to speak directly with Plaintiff was retaliation for Plaintiff's complaints of discrimination against the Local 891 and utilizing FMLA. *Id.* at ¶54.

On March 26, 2023, Plaintiff's exhausted his FMLA. *Id.* at ¶55. The hospital discharged him the following day. *Id.* at ¶55. Immediately upon discharge, UPS's Resources Living Counselor finally decided to call Plaintiff. *Id.* at ¶55. Plaintiff could not respond due to being incapacitated. Such delay in retaliation for utilizing FMLA and his prior complaints of discrimination. *Id.* at ¶55.

Between April and September 2023, Local 891 engaged in a pattern of disrupting Plaintiff's treatment. *Id.* at ¶57. Rutherford repeatedly led Plaintiff to believe that she was confirming his eligibility for short term disability and obtaining documents for his providers to complete. *Id.* at ¶57. However, Plaintiff's treatment providers repeatedly denied receiving such requests. After confronting her in July 2023 regarding her repeated misrepresentations, Rutherford failed to respond to Plaintiff's emails. *Id.* at ¶57. Local 891's dereliction of its obligations at a time when

9

Plaintiff was in greatest need was in retaliation for utilizing FMLA and his prior complaints of discrimination. *Id.* at ¶57.

On September 15, 2023, Rutherford informed Plaintiff that he had been denied disability benefits because UPS had not executed the paperwork. *Id.* at ¶58. Subsequently, a third-party administrator informed Plaintiff that the denial was related to a coding issue with either UPS or Local 891. *Id.* at ¶58. On September 26, 2023, Plaintiff emailed Rutherford, Walters, and Pinkard to rectify the problem. *Id.* at ¶58. All ignored him in retaliation for utilizing FMLA and his prior complaints of discrimination. *Id.* at ¶58. Plaintiff did not receive disability benefits until almost one year after his stroke, in February and April 2024 due to Defendants' retaliatory conduct. *Id.* at ¶59.

On January 23, 2023, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, 423-2022-01718 against Defendant United Parcel Service, Inc. *Id.* at ¶4. On January 29, 2024, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission, 423-2023-01745 against Defendant International Brotherhood of Teamsters Local 891. *Id.* at ¶6.

### III.  <u>STANDARD OF REVIEW</u>

A motion to dismiss under the Federal Rule of Civil Procedure § 12(b)(6) may be granted only if, accepting all well-pleaded allegations in the complaint as true and viewing them in the light most favorable to the Plaintiff, a court finds that Plaintiff has failed to set fair notice of what the claim is and the grounds upon which is rests. *Bell Atlantic Corp. v. Twombly*, 127 S. Ct, 1955, 1964 (2007). A complaint will survive a motion under Fed. R. Civ. P §12(b)(6) if it states plausible grounds for Plaintiff's entitlement to the relief sought, *id.* at 1965-66, i.e., it need merely contain sufficient factual allegations to raise a right to relief above the speculative level, id. at 1965.

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting and citing *Twombly*, 550 U.S. at 556-57). When allegations are made upon information and belief they satisfy the pleading requirements "where the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal citations omitted).

The Fifth Circuit has recognized that "the purpose of a Rule 12(b)(6) motion [is] to test the formal sufficiency of the statement for relief; it is not a procedure to be invoked to resolve a contest about the facts or the merits of a case." *Edwards v. Coldwell Banker Real Estate Corp., 2006 WL 2404718,* \*1 (N.D. Miss. Aug. 18, 2006) (citing *Murray v. Amoco Oil Co.*, 539 F.2d 1385 (5th Cir. 1976)).

Plaintiff meets this standard of review, well within the meaning of the statute and foregoing case law, thus warranting denial of Local 891's Motion to Dismiss.

## IV.    LAW AND ARGUMENT

### A.  Grays Exhausted His Administrative Remedies Under Title VII. (Counts 2 and 6).

Grays properly and timely exhausted his administrative remedies against Local 891 by filing his Charge of Discrimination on January 23, 2023, and January 29, 2024. Under 29 C.F.R. § 1601.12(a)(3), an EEOC charge must contain "[a] clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices." A charge is

deemed sufficient when the EEOC "a written statement sufficiently precise to identify the parties, and to describe generally the action or practices complained of." 29 C.F.R. § 1601.12(b).

The Fifth Circuit applies a liberal standard in construing EEOC charges. In *Preston v. Tex. Dep't of Family & Protective Servs.*, 222 F. App'x 353, 356-57 (5th Cir. 2007), the Court emphasized two key principles: "(1) [c]onsistent with the remedial purposes underlying Title VII, we construe employment discrimination charges with the utmost liberality, bearing in mind that such charges are generally prepared by laymen untutored in the rules of pleading, and (2) the charge must contain an adequate factual basis so that it puts the employer on notice of the existence and nature of the charges and so the EEOC may have an opportunity to attempt to obtain voluntary compliance." *Id.* at 356. (internal quotation marks omitted).

In *Pacheco v. Mineta,* 448 F.3d 783, 788 (5th Cir. 2006), the Fifth Circuit reiterated that "the scope of an EEOC complaint should be construed liberally," and includes not only the charge itself but also " the scope of the EEOC investigation `which can reasonably be expected to grow out of the charge of discrimination.'" *Id.* at 788-789 (quoting *Sanchez v. Standard Brands, Incorporated*, 431 F.2d 455, 466 (5th Cir.1970)). In *Sanchez*, 431 F.2d 455, 466, the court held that "[t]he crucial element of a charge of discrimination is the factual statement contained therein," because under "[t]he context of a statute like Title VII it is inconceivable that a charging party's rights should be cut off merely because he fails to articulate correctly the legal conclusion emanating from his factual allegations." *Id.* at 462.

Similarly, *Davenport v. Edward D. Jones & Co.*, *L.P.*, 891 F.3d 162, 167 (5th Cir. 2018), the court held a Title VII lawsuit that can include only those allegations that are "like or related to [those] allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Id.* at 167.

The Fifth Circuit has "recognize[d] a general rule that `a party not named in an EEOC charge may not be sued under Title VII. … When applying that general rule, however, courts liberally construe Title VII's naming requirement so as to not frustrate claimants with needless procedural roadblocks." *Id.* at 481, *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014), (quoting *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir.1988)). For this reason, the Fifth Circuit has recognized two exceptions to the general rule, "the identity of interest exception and the actual notice exception. ('[T]he entire point of the judicially-recognized exceptions to the named-party requirement is to permit suits to go forward where, despite the plaintiff's failure to name the defendant in the charges, the purposes of the named-party requirement have nonetheless been met.')" *Id.* at 483. The identity of interest test examines four factors:

> 1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
> 2) whether, under the circumstances, the interests of a named [party] are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
> 3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
> 4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.

*Id.* at 483 (quoting *Glus v. G.C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977)).

The actual notice exception applies "if `an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance[.]'" *Id.* (quoting *Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130*, U. A., 657 F.2d 890, 905 (7th Cir. 1981)).

Local 891 erroneously asserts that Plaintiff failed to exhaust his administrative remedies under Title VII by filing his January 29, 2024 Charge of Discrimination beyond the 180-day

statutory period. However, Local 891 fails to acknowledge that the last act of discrimination in that Charge occurred on October 3, 2023, when Local 891 denied Plaintiff's appeal regarding his short-term disability benefits, ***not*** the October 19, 2022 hearing as Local 891 claims. Therefore, using October 3, 2023 as the last act of discrimination, the court will find that Plaintiff timely filed his Charge within the 180-day statutory deadline.

Furthermore, Local 891 claims that Plaintiff's EEOC charge fails to address discrimination claims related to the Local 891's representation of Plaintiff. However, Plaintiff's January 23, 2023 Charge (¶4) explicitly states:

> " I even specifically heard that I was potentially going to be fired as well from one of the union stewards. In response, I decided to file a grievance objecting to being reprimanded for this and detailing the racial harassment I endured working under Walters. I was advised by multiple different union representatives to drop the grievance. In fact, Thomas Holiday, one of the union stewards, even advised me to do it by warning me that I could get fired for stealing time if I persisted. On September 1, 2022, I was discharged for that exact reason, as I was accused of stealing time. I immediately filed another grievance, and my case was referred to a National Panel in Tulsa, Oklahoma. While the decision was overturned and I was eventually reinstated on October 31, 2022, I did not receive compensation for the 2 months I was not working."

(*See*, Exhibit 1 to Plaintiff's Opposition to Motion to Dismiss, January 23, 2023 EEOC Charge filed by Grays).

Applying the liberal construction of interpretation from *Pacheco*, 48 F.3d 783, 788, the January 23, 2023 Charge includes factual allegations sufficient to trigger an EEOC investigation into Local 891's conduct. UPS's reference in its June 10, 2023 Position Statement of Local 891's actions and the CBA (indicating that the scope of the EEOC's investigation reasonable included Local 891) supports this argument. (*See*, Exhibit 2 to Plaintiff's Opposition to Motion to Dismiss, June 10, 2023 United Parcel Service, Inc. Position Statement).

Even though the Local 891 was not explicitly named in the January 23, 2023 Charge of Discrimination, the identity of interested party and actual notice exception under the *Simbaki, Ltd.*, 767 F.3d 475, 481, exception applies. Applying the identity of interest test from *Glus*, 562 F.2d 880, 888, the court will find: 1) the Local 891's role could have reasonably been ascertained at the time the Charge was filed; 2) the UPS, and Local 891's shared common interest in obtaining voluntary conciliation and compliance, it was unnecessary to include Local 891 in proceedings; 3) the Local 891's interest was not prejudiced by its absence, as the UPS advocated its shared interest in the Position Statement, (*See*, Exhibit 2); and 4) Local 891 represented its relationship with Mr. Grays through his employment with the UPS. Applying the actual notice exception, under *Eggleston*, 130, U. A., 657 F.2d 890, 905, UPS named individuals acting on the Local 891's behalf in their June 10, 2023 Position Statement, affording them the opportunity to engage in conciliation proceedings.

Plaintiff timely and properly exhausted his administrative remedies under Title VII for his claims of discrimination and retaliation in his January 29, 2024 Charge of Discrimination. His January 23, 2023 Charge of Discrimination sufficiently identified the factual basis for the claims and included references to the Local 891's actions. Even though Local 891 was not named in the earlier charge, the Fifth Circuit's exceptions to the naming requirement apply. As such, this Court should deny dismissal against Local 891 on exhaustion grounds.

**B. Grays Complaint Alleges Plausible Claims of Discrimination and Retaliation under Title V11 and §1981.**

    **1.**     <u>**Dicrimination (Count 2 and 4)**</u>

Plaintiff adequately pleaded claims of race discrimination and retaliation under Title VII and §1981. To establish a *prima facie* case of discrimination under Title VII and §1981, "A plaintiff may prove discrimination through either direct or circumstantial evidence." *See, Wallace v.*

*Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001). Direct evidence is defined as "[e]vidence which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Brown v. East Miss. Elec. Power Ass'n*, 989 F.2d 858, 861 (5th Cir.1993). Where only circumstantial evidence is available, a plaintiff must proceed under the three-step *McDonnell Douglas-Burdine* framework to prove "[d]isparate treatment *inferentially,* rather than directly. Those three steps are: (1) The plaintiff must prove--by a preponderance of the evidence-- a prima facie case of disparate treatment; (2) if the plaintiff is successful, the burden shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its decision, and (3) if that is done, the plaintiff may attempt to demonstrate that the defendant's proffered explanation is pretextual." See, *Davis v. Chevron U.S.A., Inc.*, 14 F.3d 1082, 1087 (5th Cir. 1994) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04 (1973)).

When asserting *prima facie* case of discrimination by a union, the Fifth Circuit has held that a plaintiff must allege: "(1) that the [employer] committed a violation of the collective bargaining agreement with respect to the plaintiff; (2) that the [union] permitted that breach to go unrepaired, thus breaching its own duty of fair representation; and (3) that there was some indication that the [union's] actions were motivated by racial animus." *Id.* at 6, *Stalcup v. Commc'n Workers of Am.*, 44 F. App'x 654, 654 (5th Cir. 2002) (citing *Bugg v. International Union of Allied Industrial Workers of America, Local 507*, 674 F.2d 595 (7th Cir. 1982)).

Plaintiff adequately pleaded allegations of Local 891's discrimination. Plaintiff alleges that the Local 891 failed to fully investigate or pursue his February 2, 2022, grievance by omitting key pages and refusing to process it under Article 36 (Nondiscrimination) Clause) and Article 37 (Management Employee Relations) of the CBA. (Compl. ¶33, ¶46). Plaintiff further alleges that union representatives Henry, Hollidays, and Pinkard, actively discouraged from pursuing race-

based grievances. (*See* ¶¶32-33, ¶36). The Court in *Stalcup*, 44 F. App'x 654, 654 found that if a "[u]nion is not bigoted, but it has decided as a matter of policy not to grieve complaints of discrimination by black members of the bargaining unit because the company is hostile to such complaints and the union fears that this hostility will make it harder for the union to succeed in its dealings with the company. This the Supreme Court held to be a form of discrimination in *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-69, 96 L. Ed. 2d 572, 107 S. Ct. 2617 (1987)." *Id.* at 8. These facts in application of the case law in *Stalcup*, 44 F. App'x 654, 654, constitute direct evidence of discriminatory animus under *Brown*, 989 F.2d 858, 861 and *Portis v. First Nat'l Bank*, 34 F.3d 325, 328–29 (5th Cir. 1994).

Moreover, Plaintiff alleges that the Local 891 failed to investigate Plaintiff's report of physical threat by his co-worker on April 24, 2022. (*See* ¶40) and withdrew Plaintiff's complaints of disparate treatment without Plaintiff's consent. (*See* ¶46). The Fifth Circuit in *Stalcup*, 44 F. App'x 654, 654 emphasized "If a black worker asks the union to grieve a complaint, the union refuses, though if the worker were white the union would grieve his complaint. This is a clear violation not only of section 703(c) of Title VII, but also of the union's duty of fair representation of all members of the collective bargaining unit, a point settled by the Supreme Court many years before Title VII was enacted." *Id.* at 215 (internal citations and quotations omitted).

Here, Plaintiff has alleged sufficient facts to establish that Local 891's failure to pursue his grievances was racially motivated or driven by discriminatory policy, satisfying the *Stalcup* standard. Plaintiff has stated a plausible claim of discrimination under Title VII and § 1981. Local 891's motion to dismiss Counts 2 and 4 should be denied.

2.    __Retaliation (Count 6 and 8)__

Plaintiff has adequately pleaded retaliation under Title VII and §1981. To establish a claim of retaliation under Title VII and §1981, plaintiff must show: (1) he engaged in protected activity; (2) he suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action. *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 945 (5th Cir. 2015).

The Fifth Circuit has ruled that causal connection when employer had knowledge of the employee's protected activity and adverse action occurred within reasonably close temporal proximity of employ's engagement in protected activity. "We've repeatedly held periods of a few months sufficient to satisfy causation in a prima facie case. See, e.g., *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 (5th Cir. 2016) (holding two months sufficient to show causal connection); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001) (suggesting 'a time lapse of up to four months has been found sufficient to satisfy the causal connection'" *Id* at 653, *January v. City of Huntsville*, 74 F.4th 646, 653, 2023 (5th Cir. 2023).

Plaintiff engaged in protected activity against Local 891 by filing his Charge of Discrimination on January 23, 2023. (Compl. ¶52). Shortly thereafter, in March 2023, Plaintiff alleges that union representative Pinkard began refusing to communicate with him. (*See* ¶54). This two-month satisfies the causation element under *January*, 74 F.4th 646, 653, 2023 and *Outley*, 840 F.3d 212, 219.

The  retaliation continued throughout 2023. Plaintiff alleges that Local 891 disrupted his medical treatment between April and September by failing to submit necessary documents for the approval of his short-term disability benefits. (*See* ¶57). This interference ultimately led to the

termination of his benefits in September, followed by Local 891's refusal to assist when Plaintiff reached out on September 26, 2023. (*See* ¶58).

These actions constitute materially adverse actions that plausibly support a retaliation claim under *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006), which held that any action that might dissuade a reasonable worker from engaging in protected activity qualifies as retaliation. Plaintiff has stated a plausible claim for retaliation under both Title VII and § 1981. Local 891's motion to dismiss Counts 6 and 8 should be denied.

### C. Grays Has An Actionable Claim Against Local 891 for Denial of His Requested FMLA Leave and Short-Term Disability Benefits (Count 9).

Plaintiff has a plausible claim against Local 891 for denial of his FMLA leave and short-term disability benefits. Private-sector employees are permitted to bring a claim against their union for grievances related to employment benefits. The Supreme Court in *Vaca v. Sipes*, 386 U.S. 171, 190 (1967), permitted private-sector employees to "[b]ring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in its handling of the employee's grievance," *Id.* at 186.

The union's duty of fair representation requires it to represent employees fairly, impartially, and without discrimination, including in matters involving the administration of collectively bargained benefit programs. Plaintiff has sufficiently alleged that the Local 891 has breached its fair duty of representation by failing to assist Plaintiff in processing his request for FMLA and his short-term disability benefits. Specifically, Plaintiff alleges that he submitted a grievance concerning his inability to access these benefits, and that Local 891 took no action to assist him. (Compl. ¶¶57-58). Plaintiff further contends that Local 891 falsely disclaimed responsibility by asserting it had no control over such determination, despite express provisions in Article 30 of the

CBA entitled "Health and Disability Coverage Clause". (*See*, Exhibit 2, page 212-221). Therefore, Plaintiff does have an actionable claim against Local 891 under FMLA and for the denial of his short term disability benefits.

Local 891's failure to advocate for Plaintiff's rights under the CBA or to intervene when his medical leave and disability benefits were jeopardized constitutes arbitrary and discriminatory conduct, sufficient to state a claim under *Vaca*, 386 U.S. 171. Courts have held that a union may be liable when it knowingly permits the employer to violate a member's benefit rights under the CBA or fails to process related grievances in good faith. See *DelCostello v. Int'l Bhd. of Teamsters*, 462 U.S. 151, 164–65 (1983). Plaintiff has alleged facts that, if proven, would establish that the Local 891 breached its duty of fair representation in connection with his FMLA and disability benefits claims. Accordingly, Local 891's motion to dismiss Count 9 should be denied.

## V.     <u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Derrick Grays respectfully requests that the Court deny Local 891's Motion to Dismiss and grant such other and further relief as the Court deems just and proper. In the alternative, Plaintiff respectfully requests that this Court permit Plaintiff leave to amend the Complaint to cure any deficiencies.

Dated: New York, New York
           April 21, 2025

                                        Respectfully submitted,

                                        **Plaintiff, Derrick Grays**

                        By:     <u>/s/ Michael P. Hilferty</u>
                                        Michael P. Hilferty
                                        Tuba J. Farooqui
                                        *Admitted Pro Hac Vice*
                                        WHITE, ROSE & HILFERTY, P.C.
                                        757 Third Ave, 20th Floor
                                        New York, New York 10017

Tel: 917 633 5760
MPH@nycjobattorney.com

**Local Counsel:**

 /s/ Jason E. Campbell
Jason E. Campbell
904 N. Main Street
CAMPBELL LAW FIRM, P.A.
Water Valley, MS 38965
Tel: 662-537-4921
Jason@campbelllawms.net