**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION**

| | |
|---|---|
| **DERRICK GRAYS** | **PLAINTIFF** |
| **VS.** | **CASE NO. 1:24-CV-00217-GHD-DAS** |
| **UNITED PARCEL SERVICE, INC., and INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 891** | **DEFENDANTS** |

**DEFENDANT INTERNATIONAL BROTHERHOOD OF TEAMSTERS LOCAL 891's REBUTTAL BRIEF IN SUPPORT OF THE MOTION TO DISMISS**

## I.  INTRODUCTION

Defendant, International Brotherhood of Teamsters Local 891 ("Local 891" or the "Union") respectfully files this Rebuttal Brief in further support of the Union's Motion to Dismiss (Doc. 28) and to address the arguments raised by Plaintiff Derrick Grays ("Grays") in his Memorandum of Law in Opposition to Defendant's Motion to Dismiss. ("Opposition") (Doc. 32). Grays' Complaint must be dismissed, *with prejudice*, for the following reasons:

## II.  ARGUMENT

### A. Grays Failed To Exhaust Title VII Requirements. (Counts 2 and 6)

Grays has neither timely nor properly exhausted his administrative remedies under Title VII to raise discrimination and retaliation claims. Grays cannot raise Title VII representational claims against Local 891 when his EEOC charge filed in January 2023 only named his employer, UPS. (Doc. 32-1). The Title VII claims in Counts 2 and 6 must be dismissed, *with prejudice*.

1

### 1. **The Exceptions Cited By Grays Do Not Apply.**

Contrary to Grays' Opposition, the general rule requires the dismissal of these claims, even with the exceptions applied. The Fifth Circuit recognizes the general rule that a party not named in the EEOC charge cannot be sued under Title VII. *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014), *as revised* (Sept. 18, 2014); *Hartz v. Adm'rs of Tulane Educ. Fund*, 275 F. App'x 281, 286 (5th Cir. 2008); *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988). The Fifth Circuit also recognizes exceptions to the general rule to the Title VII's named-party rule: "identity-of-interest"[1] and "actual-notice." *Simbaki* at 482-83 and *Mueller* at 307 (a party not named in a charge may not be sued under Title VII unless there is a clear identity of interest between it and the party named in the charge or the plaintiff was unfairly prevented from filing a charge).

In a factually similar case, the Sixth Circuit applied the identity-of-interest test and dismissed plaintiffs' Title VII claims against the union when the charge only named the plaintiffs' employer. *Jones v. Truck Drivers Loc. Union No. 299*, 748 F.2d 1083, 1086 (6th Cir. 1984). In that case, nine months after filing the charge against their employer, the plaintiffs filed a complaint against the union alleging Title VII claims and a breach of the union's duty of fair representation. Like the Fifth Circuit's treatment,[2] the Sixth Circuit acknowledged that the timely filing of an

---

[1] In *Simbaki*, the Fifth Circuit found that either actual notice or identity of notice may apply. The following factors for the identity of notice include:
  1) whether the role of the unnamed party could through reasonable effort by the complainant be ascertained at the time of the filing of the EEOC complaint;
  2) whether, under the circumstances, the interests of a named are so similar as the unnamed party's that for the purpose of obtaining voluntary conciliation and compliance it would be unnecessary to include the unnamed party in the EEOC proceedings;
  3) whether its absence from the EEOC proceedings resulted in actual prejudice to the interests of the unnamed party;
  4) whether the unnamed party has in some way represented to the complainant that its relationship with the complainant is to be through the named party.
*Id.* at 482–83 (citing *Glus v. G. C. Murphy Co.*, 562 F.2d 880, 888 (3d Cir. 1977).

[2] The Fifth Circuit as well treats Title VII exhaustion requirements as a prerequisite to a lawsuit, and not as a jurisdictional bar. "Failure to exhaust is an affirmative defense that should be pleaded." *Davis v. Fort Bend Cnty.*, 893 F.3d 300, 307 (5th Cir. 2018), *aff'd sub nom. Fort Bend Cnty., Texas v. Davis*, 587 U.S.

2

EEOC charge is akin to a statute of limitations. *Id.* (citing *Zipes v. T.W.A.,* 455 U.S. 385, 393 (1982). The Sixth Circuit recognized that the union not named in a charge may not be sued under Title VII unless there is a clear identity of interest between the union and the party named in the charge (the employer) or the union unfairly prevented the filing of a charge. *Id*. In its analysis, the court found no basis for setting aside the requirement as "technical;" the plaintiffs were not prevented by the union from filing a charge. *Id.* The court found that the plaintiffs were aware of the union's conduct at the time they filed the Title VII claim against the employer. *Id.* Further the court explained that the union's and employer's interests were not similar. The union's "separate interests in EEOC proceedings were prejudiced by the failure to file a charge against it; there is no way to know what action the EEOC would have taken respecting the Union or whether it would have issued a right to sue letter." *Id.* The Court dismissed the Title VII claims against the union because the plaintiffs failed to exhaust.

The *Jones* analysis applies here and mandates the same result. Grays' 2023 EEOC charge against UPS facially shows he was aware of Local 891 involvement in the grievance process at the time he filed his charge against UPS. *Jones* at 1086. That 2023 EEOC charge describes the Union's role during his grievances, challenging the disciplinary actions taken against him: reprimand, suspension, and finally termination for stealing time. In his charge, Grays indicates that he was advised by his union steward to "drop the grievance." Grays asserts, without support, that he was terminated because he raised a discrimination claim in his grievance. Despite clear knowledge of the Union's involvement in the grievance process, Grays did not name the Union in either of the 2023 charges. Grays provides no reason why he could not have asserted a charge against the Union for events occurring in 2022, when he filed his charges against UPS. Furthermore, applying *Jones*,

---

541, 139 S. Ct. 1843, 204 L. Ed. 2d 116 (2019) (citing *Flagg v. Stryker Corp.*, 819 F.3d 132, 142 (5th Cir. 2016)).

the prejudice to the Union is clear where it is deprived of the EEOC's investigatory and conciliatory role. Finally, Grays does not allege that the Union ever represented that UPS had authority to act of its behalf. Applying the factors of identity-of-interest exception, Grays fails to meet even one of the Fifth Circuit requirements.

Grays also cannot show that UPS and the Union are so similar that adding the Union to the 2023 charges was unnecessary. *Simbaki* is wholly inapplicable here. In *Simbaki*, the Fifth Circuit undertook a thorough review of whether "Berryhill Corporate" had constructive notice, as an unnamed party, of an EEOC charge identifying the Berryhill trade name and a Berryhill Montrose franchise location. Clearly, this element is utilized in cases involving corporate identities with similar names (i.e., parents and subsidiaries or franchise scenarios). That is not the case here where UPS and the Union are not only dissimilar, but often adversarial.

Grays also fails to meet the actual notice exception since the Union was not "given the opportunity to participate in conciliation proceedings aimed at voluntary compliance," the purpose of the named-party requirement has been accomplished, and "the charge is sufficient to confer jurisdiction over that party." *Simbaki* at 483 (*Eggleston v. Chicago Journeymen Plumbers' Loc. Union No. 130, U. A.*, 657 F.2d 890, 904 (7th Cir. 1981). Here, there is no actual notice because Local 891 did not receive a copy of the charge(s) filed against UPS, nor is this fact alleged in Grays' Complaint. The Union cannot even receive copies of these charges and its accompanying investigative file under its recent FOIA request, because it was not named on the charge.

### 2. **The Claims Against The Union Do Not Grow Out Of A Timely EEOC Charge.**

It was not until 2024 that Grays filed a charge against Local 891. (Doc. 28-1). In this charge, Grays begins with the statement: "On January 23, 2023, I filed a charge of discrimination against UPS, alleging they retaliated against me for opposing discriminatory practices." (Doc. 32-1).

However, the charge against Local 891 relates to Grays' medical leave under FMLA and denial of disability benefits. Grays believes Local 891 controls benefit determinations and denied his disability benefits in retaliation for Grays filing an EEOC charge against UPS a year ago. It is clear that Grays' charge against the Union is beyond the statutory 180-days deadline to allege an unfair employment practice against the Union over the Union's handling of his grievances, all which occurred in year 2022.

In his Opposition, Grays cites case law which actually supports the Court dismissing the Title VII claims because there is no reasonable expectation that a breach of the duty of fair representation claim will grow out of an EEOC charge relating to Grays' FMLA leave and short-term benefits. While the Fifth Circuit urges courts to apply liberal construction to exhaustion requirements in a Title VII claim, that claim must still be reasonably expected to grow out of an existing EEOC charge of discrimination. *Preston v. Texas Dep't of Fam. & Protective Servs.*, 222 F. App'x 353, 357 (5th Cir. 2007) (Title VII claims are limited only by the scope of the EEOC investigation that could reasonably be expected to grow out of the initial charges of discrimination). *Davenport v. Edward D. Jones & Co., L.P.*, 891 F.3d 162, 167 (5th Cir. 2018) (finding a Title VII lawsuit is limited only to those allegations contained in the EEOC charge and growing out of such allegations during the pendency of the case before the Commission). In *Edward D. Jones,* the Fifth Circuit affirmed the dismissal of plaintiff's constructive discharge claims. The plaintiff requested leave for days off after her supervisor made an inappropriate comment to her and showed her a nude photograph. Nevertheless, the district court correctly held that the plaintiff failed to exhaust administrative remedies since the allegations in the charge were not similar to or related to the constructive discharge claim. *Id*. In *Pacheco*, the Fifth Circuit affirmed the trial court's dismissal of a disparate impact claim under Fed. R. Civ. P. 12(b)(1),

because the charge only alleged a disparate treatment claim. *Pacheco v. Mineta*, 448 F.3d 783, 792 (5th Cir. 2006). In review, the Fifth Circuit found it was unreasonable to expect a disparate impact investigation to grow out from a charge that complained of past concrete incidents of disparate treatment and identified no neutral employment policy at all. *Id*.

Grays' charge against Local 891 is limited to an allegation regarding his failure to be awarded disability benefits since March 2023, after he initiated FMLA leave. (Doc. 28-1). Grays' charge further indicates that his appeal for this disability benefit was denied. *Id*. Grays faults the Union for these outcomes with no allegation as to the connection between the Union and the adverse action. Further, Grays makes conclusory allegations that Local 891 is somehow retaliating against him for filing a charge of discrimination against UPS. *Id*. In his opposition, Grays provides no support to show that he exhausted the administrative remedies required under Title VII to bring discrimination and retaliation claims related to the Union's representation of him. Furthermore, any amendment to Grays' Complaint would be futile because the 180-day statutory limit to file a new EEOC charge has long passed since Grays' grievance was resolved at a hearing in October 2022. The Title VII claims in Counts 2 and 6 must be dismissed, *with prejudice*.

### B. Grays Lacks Plausible Claims Under Section 1981 (or Title VII).[3]

As a preliminary matter, in his Opposition Grays argues new "facts" that were not alleged in the Complaint. There are no allegations that show Local 891 "refusing to process" Grays' grievance. As shown in Grays' EEOC charge against UPS: "On January 23, 2023, I filed a charge of discrimination against UPS, alleging they retaliated against me for opposing discriminatory practices…*I had filed a grievance with the union alleging racial discrimination*." (Doc. 32-1)

---

[3] The court may evaluate claims together under §1981 and Title VII because "these claims are governed by the same standard." *Gomiller v. Greenwood Leflore Hosp.*, No. 4:23-CV-75-DMB-JMV, 2023 WL 7752236, at *3 (N.D. Miss. Nov. 15, 2023). However, Grays' Title VII claims of discrimination and retaliation must be dismissed for the failure to exhaust (Counts 2 and 6).

(Emphasis added). Grays cannot show that the Union deliberately refused to process his grievances.

### 1. **Discrimination (Count 4).**

Grays does not show that purposeful intentional discrimination based on race under §1981 affected the Union's representation of him. Local 891 achieved favorable results for Grays in the grievances. Plausibility "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal* 556 U.S. 662, 678, (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), and *Papasan v. Allain,* 478 U.S. 265, 286 (1986). Aside from conclusory allegations, Grays fails to show he was subjected to adverse union action to maintain an action against the Union.

In his Opposition, Grays re-alleges that Pinkard withdrew Grays' complaint of disparate treatment. However, Grays' Complaint shows no factual support for this contention. It is like Grays' many other allegations, conclusory or conjecture. Further, Grays cannot point to adverse union action; because from the grievance filed on Grays' behalf, Local 891 achieved Grays' reinstatement of his employment. *Id*. Grays' allegations do not support a discriminatory motive, as opposed to other possible reasons for the Union's actions. Grays believes the Union steward (Holliday) failed to correct the missing pages in his grievance. (¶33). Grays further believes that Holliday took no action when Grays reported being physically threatened by another co-worker. (¶40). Grays' allegations are insufficient to raise a plausible claim under §1981 because without more, "mere inaction does not constitute acquiescence." *York v. American Telephone & Telegraph Co.,* 95 F.3d 948, 956 (10th Cir. 1996); *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 669, (1987).

Grays' allegations do not show intentional discrimination *by the Union*. According to Grays, Holliday warned Grays that he "would be targeted for termination" by alleging race

7

discrimination in the grievance. (¶33). Holliday purportedly discouraged Grays from raising too many details and dates in the grievance. *Id*. Holliday also cautioned Grays against continuing to use time on-the-clock to obtain evidence for his grievance because UPS "would accuse [him] of stealing time." *Id*. None of these allegations, taken as true, demonstrate that the Union purposely discriminated against Grays based on his race.

### 2. Retaliation (Count 8).

Grays lacks a prima facie showing that Local 891 retaliated against him. For a §1981 retaliation claim, Grays cannot establish that he engaged in activities protected by §1981 for a causal connection to exist. *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 390 (5th Cir. 2017) (finding that plaintiffs failed to demonstrate a causal connection for a plausible claim under §1981), *Eberle v. Gonzales*, 240 F. App'x 622, 629 (5th Cir. 2007) (holding that the subjective belief of retaliation without more is insufficient). A related Northern District Court declined to evaluate protected activity under §1981 and Title VII when it was clear, (as it is here) that the plaintiff failed to exhaust "all administrative remedies for her retaliation claims." *Gomiller v. Greenwood Leflore Hosp.*, No. 4:23-CV-75-DMB-JMV, 2023 WL 7752236, at *4, FN 11 (N.D. Miss. Nov. 15, 2023) (dismissing plaintiff's retaliation claims for failure to exhaust by not including retaliation in her EEOC charge either by checking the box or describing retaliation).

Similarly, Grays cannot establish that he engaged in protected activity under §1981 by pointing to an EEOC charge, filed against the employer, that did not name the Union or put the Union on notice of a retaliation claim. In fact, Grays' Opposition concedes that the Union "was not explicitly named in the January 23, 2023 Charge..." (Doc. 32, p. 15).[4] Without exhausting all

---

[4] The Complaint contains either a typographical error or a material misstatement because this EEOC charge was only filed against UPS and not "against both defendants" (¶52) (Doc. 32-1).

administrative remedies for his retaliation claim, Grays cannot allege protected activity by referring to a charge of retaliation that did not name the Union.

According to his Complaint, Grays asserts that he engaged in "protected activity complaining about discrimination and retaliation and/or opposing Defendants' unlawful employment practices on February 2, 2022, verbally to Walters and in his written grievance and three complaints of discrimination filed with the EEOC on January 23, 2023, November 27, 2023, January 29, 2024." (¶129). Grays does not show that he engaged in protected activity related to the Union's handling of his grievance, *when he only alleged retaliation against his employer*. (i.e., those charges dated January 2023 and November 2023). Unlike the charges against the employer, Grays' charge against the Union relates only to his disability benefits.[5] The timing between these charges is just over a year, and this time period is significant. Any charge related to Grays' grievance-related allegations was untimely when Grays filed his only charge against the Union in January 2024.

In his Opposition, Grays attempts to connect unknown protected activity against the employer with alleged Union retaliation fails.[6] Grays argues that in March 2023, two months after he filed the charge against UPS, Pinkard refused to communicate with him. However, none of the cited case law supports finding a causal connection where there is a lack of notice or knowledge of the protected activity and that activity is against a third party (UPS). To the contrary, in

---

[5] Grays' charge against UPS includes the allegation that after he requested FMLA leave that "I have been harassed and contacted on numerous occasions by UPS and the union threatening to fire me even though I already provided all my documentation." Notwithstanding the fact that the Union lacked any opportunity to respond to this charge, this allegation is not asserted in Grays' charge against the Union. (Compare Docs. 32-1 and 28-1).

[6] The Opposition refers to case law that supports two or four months sufficient to satisfy a causal connection. (e.g., *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 219 and FN 23 (5th Cir. 2016); *Evans v. City of Houston*, 246 F.3d 344, 354 (5th Cir. 2001); *Jan. v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023).

9

*Huntsville,* the Fifth Circuit found that the plaintiff established a causal connection when his employer terminated the plaintiff six weeks after he told his employer that he planned to file an EEOC charge against it. *Jan. v. City of Huntsville*, 74 F.4th 646, 653 (5th Cir. 2023) (noting that this six week "gap does the trick"). In that case, the Court found the employer's knowledge of the plaintiff's protected activity, informing the employer of the pending EEOC charge, was sufficient to establish a causal link. *Id.* Unlike *Huntsville*, however, Local 891 lacked any knowledge of Grays' charge against the employer until Grays filed this Complaint. The retaliation claims must be dismissed for the failure to causally connect activity against UPS to Union activity. Grays cannot rely on EEOC charge(s) filed against his employer to show that he engaged in protected activity against the Union under §1981. Any amendment would be futile because Grays is barred by the statutory limit allowing only 180-days to file a new charge concerning any alleged discrimination of a grievance resolved in October 2022.

Grays' only charge against the Union, filed on January 2024, relates to his benefits and vaguely concludes with Grays' belief that the Union is retaliating against him "for filing a charge with the EEOC." (Doc. 28-1). Notwithstanding the lack of a causal connection, Grays cannot maintain a plausible claim against the Union, since it does not control benefit determinations. Grays' retaliation claims against the Union as to the delay he experienced in obtaining short-term disability benefits is wholly misplaced. Like the discrimination claims, Grays blames the Union for this delay based on his conjecture that the Union somehow is in control of benefit determinations.

Further, the Union's conduct, as alleged, is not retaliatory. According to the Complaint, Pinkard refused to communicate with Grays in March 2023 in retaliation for his complaint of

10

discrimination and using FMLA leave.[7] (¶54). Grays also indicates that at that time he suffered a stroke, and his friend communicated with Pinkard on Grays' behalf. *Id*. Pinkard referred Grays' friend to the Local 891's Pension and Insurance Clerk (Rutherford) to inquire if Grays was eligible for short-term disability. Aside from Grays' subjective belief and conjecture, retaliation is not shown. Other allegations that complain of a "a pattern of disrupting" Grays' treatment are conclusory and should not be considered. (¶57). The Complaint fails to allege retaliatory conduct for a plausible claim against the Union.

### C. Grays' Alleged Claims Against The Union Are Not Actionable Under FMLA. (Count 9)

Grays cannot assert an action under FMLA against the Union, because the Union is not his employer. In his Opposition, Grays ignores this critical distinction and, instead, advances a new cause of action, that the Union breached its duty of fair representation, which is also not actionable under FMLA.[8] Notwithstanding the fact that Grays' Complaint has not alleged a duty of fair representation claim under §301 of the Labor Management Relations Act (LMRA), 29 U.S.C. §185, any such claim against the Union as to the employer's denial of FMLA (occurring on or shortly after Grays' reinstatement date, October 31, 2022) would be untimely under the LMRA's six-month statute of limitations from the alleged breach. *Thomas v. LTV Corp.*, 39 F.3d 611, 622 (5th Cir. 1994) (citing Section 10(b) of the National Labor Relations Act, 29 U.S.C. §160(b)).

---

[7] Grays' Opposition is silent on Grays' retaliation claim under FMLA against the Union. As addressed in the Union's Memorandum in Support of the Motion to Dismiss, the Court should reject any claims alleged in the Complaint against the Union that Grays' request for FMLA leave constitutes protected activity under §1981 (or Title VII). *See Longoria v. Via Metro. Transit*, No. SA-21-CV-01171-JKP, 2022 WL 1445396, at *9 (W.D. Tex. May 6, 2022) ("taking FMLA leave is not a protected activity under Title VII") (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)). (Doc. 28, p. 16).

[8] Count 9 is entitled "Discrimination and Retaliation in Violation [FMLA] 29 U.S.C. §2601 against Defendants UPS and Local 891."

According to Grays' Opposition, "he submitted a grievance concerning his inability to access these benefits, and that Local 891 took no action to assist him." (Doc. 32, p. 19, referring to Doc. 1 ¶¶ 57-58). However, Grays' Complaint contains *no* allegation that he sought to grieve UPS' denial of FMLA leave or access to benefits.[9] Grays relies on *Vaca v. Sipes* for the contention that a private-sector employees may "bring an action against his employer in the face of a defense based upon the failure to exhaust contractual remedies, provided the employee can prove that the union as bargaining agent breached its duty of fair representation in handling of the employee's grievance." *Vaca v. Sipes*, 386 U.S. 171, 186 (1967). However, Grays has not alleged that he requested that the Union file a grievance on this issue and/or that the Union refused to file a grievance for Grays. To the contrary, where Grays made the request that the Union file and pursue grievances, in the cases of the two grievances that Grays filed in response to the suspension and termination, the Union acted and represented Grays. (¶¶ 33 and 44; *See* Docs 28-1 and 32-1).

*Vaca v. Sipes* established that a union should not refuse to process a meritorious grievance; however, in that decision, the U.S. Supreme Court did "not agree that the individual employee has an absolute right to have his grievance taken to arbitration regardless of the provisions of the applicable collective bargaining agreement." *Vaca v. Sipes*, 386 U.S. 171 (1967). Furthermore, an arbitrable grievance is limited to those disputes contemplated by the CBA. *Baton Rouge Oil & Chem. Workers Union v. ExxonMobil Corp.*, 289 F.3d 373, 374 (5th Cir. 2002) (finding that the CBA did not permit the arbitrating grievances protesting the discharge of probationary employees even if the discharge was "unlawful"); *Paper, Allied-Indus. Chem. & Energy Workers Int'l Union, Loc. 4-12 v. Exxon Mobil Corp.*, 657 F.3d 272, 277 (5th Cir. 2011) (finding that the union cannot establish an "arbitrable grievance" by alleging bad faith). Though it is not alleged in the Complaint,

---

[9] Grays' EEOC charge indicates that he "initiated the process to appeal the decision in order to regain access to [his] benefits, but it was not granted." (Doc. 28-1).

even if Local 891 failed to file a grievance as requested by Grays against UPS for denying his medical leave, the CBA does not contemplate that an arbitrable grievance includes coverage under FMLA, a private cause of action. Indeed, Grays points to no provision in the CBA that this claim is an arbitrable grievance. (Doc. 32-1, Exhibit 2).

### D. The Union is Not the Responsible Party for Disability Benefit Determinations (Counts 6, 8, and 9)

Grays' Opposition argues that Local 891 "falsely disclaimed responsibility" for the benefit determination because the CBA provides a section on "Health and Disability Coverage." Collective bargaining between unions and employers includes the negotiation of benefits as conditions of employment (e.g., Health & Welfare, Short-Term Disability, Pension, Apprenticeship, etc.). (Doc. 32-1, pp. 209, for the Coordination of Benefits for STD and LTD "as outlined in the Summary Plan Description"). However, the inclusion of a benefit package in a CBA does not establish that the Union administers these benefit plans or that the Union makes any benefit determinations. These determinations are made by the Benefit Plan Administrator (not the Union or the Employer).

The remedy for a denial of benefits would be an appeal under the terms of the specific benefit plan, and not the filing of a grievance.[10] In Grays' EEOC charge against the Union, he concedes initiating "the process to appeal" to the denial of his disability benefit. (Doc. 28-1). Grays' allegations demonstrate that he understood that the Benefit Fund had appeal procedures which he should follow. At most, the Union Insurance Clerk Rutherford acted to assist Grays in his dealings with the Fund and its third-party administrator, and Grays cannot allege that Rutherford or the Union made any benefit decisions. Grays cannot maintain a plausible claim

---

[10] This could ultimately lead to litigation, but that litigation would assert a claim against the Fund, not the Union.

13

against the Union on this issue. Other than Grays' conjecture, there is no credible allegation that the Benefit Plan and Union are one and the same.

### III. CONCLUSION

For these reasons, Defendant Local 891 respectfully requests this Honorable Court grant this Motion and dismiss all claims against Local 891, *with prejudice*.[11]

Respectfully submitted,

**Defendant, International Brotherhood of Teamsters Local 891**

/s/ *Julie Richard Spencer*
Julie Richard Spencer (LA Bar No. 20340)*
Kevin Mason Smith (LA Bar No. 31394)*
Paula M. Bruner (LA Bar No. 30417)*
*Admitted Pro Hac Vice*
ROBEIN, URANN,
SPENCER, PICARD & CANGEMI, APLC
2540 Severn Avenue, Suite 400
Metairie, LA 70002
Phone: (504) 885-9994
Fax: (504) 885-9969
Email: jrichard@ruspclaw.com
Email: kmason@ruspclaw.com
Email: pbruner@ruspclaw.com

**Local Counsel:**

/s/ *William H. Hussey*
William H. Hussey (MS Bar No. 102322)
Charles Best (MS Bar No. 106451)
Maxey Wann PLLC
401 East Capitol Street, Suite 200
Jackson, Mississippi 39207-3977
Telephone: (601) 355-8855
Facsimile: (601) 355-8881
Email: william@maxeywann.com
Email: charles@maxeywann.com

---

[11] The Counts related to Local 891 are Counts 2, 4, 6, 8, and 9. Counts 1, 3, 5, and 7 relate only to Defendant UPS and are not the subject of this Motion.

**CERTIFICATE OF SERVICE**

  I hereby certify that the foregoing Defendant International Brotherhood of Teamsters Local 891's Rebuttal Brief in Support of the Motion to Dismiss was filed and served on all counsel of record via CM/ECF this the 28th day of April, 2025.

            By: */s/Julie Richard Spencer*
               Julie Richard Spencer