UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

DERRICK GRAYS                                                                                PLAINTIFF

vs.                                                                  Civil No. 1:24-cv-00217-GHD-DAS

UNITED PARCEL SERVICE, INC., and
INTERNATIONAL BROTHERHOOD OF
TEAMSTERS LOCAL 891                                                                        DEFENDANTS

**OPINION**

Presently before the Court is Defendant International Brotherhood of Teamsters Local 891's Motion to Dismiss [Doc. No. 28] seeking to dismiss Plaintiff Derrick Grays's ("Plaintiff") claims against it. Based on the reasoning below, the Court finds Local 891's Motion [28] should be granted.

*I.      Background*

On April 19, 2021, Defendant United Parcel Service ("UPS") hired Plaintiff, a black man, as a mechanic at its Columbus, Mississippi, facility.[1] As a UPS employee, Plaintiff also became a member of the Local 891 chapter of the International Brotherhood of Teamsters union ("Local 891"). Plaintiff alleges his workplace at UPS had a "racially-discriminatory work environment" perpetuated by his UPS Automotive Fleet Supervisor Brett Walters, a white man, through his encouragement of "racially motivated commentary." In his Complaint [1] Plaintiff describes several interactions with Walters in which Walters used "racially motivated commentary" including instances in which he used "very frequent references to cracking the whip;" called Plaintiff "an investment," telling him to "get back in the field;" and said "Plaintiff 'must be on

---

[1] As required under Rule 12(b)(6) all background information comes from the Complaint [1] unless otherwise noted.

drugs.'" Plaintiff further alleges Walters and other coworkers called him "'Can't Get Right,' the name of a mute African American prisoner [movie] character." He notes this "racially motivated commentary" was also used against other black employees at UPS but stated Walters did not "exhibit [this type of behavior] against Caucasian employees."

Tensions apparently rose to new levels in June 2021 when Walters allegedly made a "cracking the whip" reference toward Plaintiff who then "told Walters not to speak to him that way and walked away." Two months later, a written poor workmanship warning was issued against Plaintiff for a leaking seal on a tire which Mechanic First Class Stacy Quinn allegedly determined was not Plaintiff's fault. Plaintiff requested Walters remove this warning from his record, but he purportedly refused and "warned Plaintiff . . . he was bringing negative attention to himself." A similar situation seemingly occurred on January 26, 2022, when "Walters and Shop Steward Thomas Holliday attempted to suspend Plaintiff for allegedly incorrectly double sealing an oil filter on Holliday's truck." During this meeting Plaintiff made a formal complaint alleging Walter targeted him because he is black: Walter denied this. Sometime later, two coworkers supposedly approached Plaintiff, warning him he would likely be terminated because of his skin color.

On February 2, 2022, Plaintiff filed a "grievance" with Holliday alleging racial harassment and age discrimination. Holliday then allegedly encouraged Plaintiff to leave out certain material from his grievance and warned Plaintiff "he would be targeted for termination if he alleged race discrimination." Plaintiff later realized his grievance was missing a page, and notified Holliday. Plaintiff alleges Holliday never fixed the issue. On two separate occasions, Plaintiff purports Holliday warned Plaintiff "UPS would accuse Plaintiff of stealing time if he spent time on the clock working to prove his case for racial discrimination." Sometime thereafter, Plaintiff claims he received several harassing emails from Walters about his work. Days later, Plaintiff alleges

2

Holliday again encouraged him to drop the racial discrimination claims and noted Local 891 Business Manager Jimmy Pinkard "indicated it would be best if [Plaintiff] disregarded the race discrimination grievance." Plaintiff then claims neither Local 891 nor UPS initiated an investigation as a result of his grievance.

On February 18 and 24, 2022, Plaintiff alleges Walters locked him out of the timekeeping system. Then on April 26, 2022, Plaintiff claims he was physically threatened by another coworker and was forced to leave the immediate area. When he reported it to Holliday the next day, he claims it was disregarded. Finally, UPS terminated Plaintiff on September 1, 2022, for stealing time, and Plaintiff filed a grievance fourteen days later disputing his termination. On October 11, 2022, UPS Labor Representative Daniel Greer, Walters, Heal, and Pinkard approached Plaintiff during a Local 891 meeting and, Plaintiff alleges, attempted to "pressure" him into resigning in lieu of termination. Plaintiff refused and requested a "neutral panel" review his termination grievance and investigate Heal and Walters. Following a hearing on October 19, 2022, at which Plaintiff had representation from Local 891, a neutral panel reinstated Plaintiff effective October 31, 2022, without backpay. Plaintiff contends Pinkard withdrew Plaintiff's disparate treatment complaint without his consent, and Local 891 failed to provide Plaintiff with a "certified letter" of the hearing's results it which "provided his similarly-situated white colleagues."

On October 25, 2022, Plaintiff requested FMLA leave to care for his grandmother. Plaintiff claims Pinkard placed Plaintiff on short-term disability for a day on October 31, 2022. UPS then denied Plaintiff's FMLA request on November 21, 2022, because, as Plaintiff alleges, Walters "entered incorrect dates on Plaintiff's paperwork." According to Plaintiff, UPS then "repeatedly sent Plaintiff backdated 72-hour Notices of Termination," and Pinkard "constantly called Plaintiff" as a concerted harassment effort against Plaintiff." Again, Plaintiff formally filed racial

3

discrimination and retaliation complaints with Pinkard on November 28, 2022. Pinkard then allegedly approved Plaintiff's FMLA from October 30, 2022, through March 27, 2023, and instructed Plaintiff to "disregard the termination notices." Plaintiff then claims he experienced issues with his insurance coverage on January 10, 2023, which Pinkard failed to resolve in retaliation for Plaintiff's prior complaints of discrimination. Thirteen days later, Plaintiff filed his first EEOC charge. UPS then allegedly cancelled Plaintiff's health benefits from January 2023 to March 2023.

Plaintiff suffered a stroke on March 23, 2023, and an unknown friend reported this to Pinkard who referred the friend to Local 891's Pension and Insurance Clerk Rhonda Rutherford to see if Plaintiff was eligible for short-term disability. Plaintiff's FMLA was exhausted on March 26, 2023, and the hospital discharged Plaintiff the next day. Simultaneously, Plaintiff alleges Walters refused communication with Plaintiff and issued "two disciplinary actions despite Plaintiff being on leave." Then, from April to September 2023, Plaintiff alleges Local 891 "engaged in a pattern of disrupting Plaintiff's [medical] treatment" when Rutherford falsely led Plaintiff to believe she was confirming his short-term disability. After confronting her in July 2023, Plaintiff claims Rutherford never responded. Finally, on September 15, 2023, Rutherford informed Plaintiff UPS rejected his short-term disability because it had not executed his paperwork. This was not corrected until almost one year after Plaintiff's stroke.

Plaintiff filed his Complaint [1] in this action on December 16, 2024, alleging claims of discrimination and retaliation in violation of 42 U.S.C. § 1981, 42 U.S.C. § 2000e (Title VII), and the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA") against the defendants. Local 891 has now filed the pending Motion [28]. Plaintiff has responded in opposition and the matter is ripe for the Court's review. Plaintiff's claims against UPS are not implicated in this Motion [28].

4

## II. *Standard of Review*

When deciding a Rule 12(b)(6) motion to dismiss, the Court is limited to the allegations set forth in the complaint and any documents attached to the complaint. *Walker v. Webco Indus., Inc.*, 562 F. App'x 215, 216–17 (5th Cir. 2014) (per curiam) (citing *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 839 (5th Cir. 2004)). "[A plaintiff's] complaint therefore must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Phillips v. City of Dallas, Tex.*, 781 F.3d 772, 775–76 (5th Cir. 2015) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007))). A claim is facially plausible when the pleaded factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).

That is, "plaintiffs must allege facts that support the elements of the cause of action in order to make out a valid claim." *Webb v. Morella*, 522 F. App'x 238, 241 (5th Cir. 2013) (per curiam) (quoting *City of Clinton, Ark. v. Pilgrim's Pride Corp.*, 632 F.3d 148, 152–53 (5th Cir. 2010) (internal quotation marks omitted)). "[C]onclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." *Id.* (quoting *Fernandez–Montes v. Allied Pilots Ass'n*, 987 F.2d 278, 284 (5th Cir. 1993) (internal quotation marks omitted)). "Dismissal is appropriate when the plaintiff has not alleged 'enough facts to state a claim to relief that is plausible on its face' and has failed to 'raise a right to relief above the speculative level.'" *Emesowum v. Houston Police Dep't*, 561 F. App'x 372, 372 (5th Cir. 2014) (per curiam) (quoting *Twombly*, 550 U.S. at 555, 570).

5

### III.     *Analysis and Discussion*

Plaintiff alleges Local 891 violated 42 U.S.C. § 1981, 42 U.S.C. § 2000e (Title VII), and the Family Medical Leave Act, 29 U.S.C. § 2601 ("FMLA"). The Court analyzes each in turn below.

#### A. Exhaustion of Administrative Remedies

Local 891 argues Plaintiff failed to exhaust his administrative remedies under Title VII. A plaintiff must first exhaust his administrative remedies to bring a valid Title VII claim; that is, he must file a charge with the EEOC "within one hundred and eighty days after the alleged unlawful employment practice occurred." 42 U.S.C. § 2000e-5(e). Once the plaintiff receives a right-to-sue letter from the EEOC, he has ninety days to commence an action in federal court. 42 U.S.C. § 2000e-5(f)(1); *Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 120 (5th Cir. 1980).

Plaintiff filed three EEOC charges: the first on January 23, 2023, named UPS as perpetrator, and alleged retaliation [32-1]; the second on November 27, 2023, named UPS as perpetrator; and the third, on January 29, 2024, named Local 891 as perpetrator, and alleged retaliation [28-1].[2] The Court notes the November 27, 2023, charge was not filed as an exhibit in this case. According to Plaintiff's Complaint [1] the first two charges were only filed against UPS, and Local 891 invokes the Fifth Circuit's general rule that "a party not named in an EEOC charge may not be sued under Title VII." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 481 (5th Cir. 2014) (quoting *Way v. Mueller Brass Co.*, 840 F.2d 303, 307 (5th Cir. 1988)) (internal quotation marks omitted). Yet, this Court must "liberally construe Title VII's naming requirement so as to not frustrate claimants with needless procedural roadblocks." *Id*. Plaintiff rebuts the general rule by

---

[2] The Court may take judicial notice of matters of public record. *Norris v. Hearst Trust*, 500 F.3d 454, 461 n.9 (5th Cir. 2007); *Binh Hoa Le v. Exeter Fin. Corp.*, 990 F.3d 410, 416 (5th Cir. 2021).

6

claiming an exception applies. The Court makes no determination on this procedural issue because as revealed below, all claims against Local 891 are dismissible on their merits.

### B. Race Discrimination

Plaintiff brings racial discrimination claims under Title VII and 42 U.S.C. § 1981. Title VII prohibits unions from "exclud[ing] or . . . expel[ling] from its membership, or otherwise . . . discriminat[ing] against, any individual because of his race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(c)(1). Section 1981 guarantees all citizens "the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings." 42 U.S.C. § 1981(a). Because Plaintiff has provided no direct evidence of discrimination by Local 891, the *McDonnell Douglas* burden-shifting framework is necessary for this analysis.[3] "The Supreme Court has held that the burden-shifting framework developed in the context of Title VII in *McDonnell Douglas Corp. v. Green*, 411 U.S. 729 [(1973)], also applies to claims of racial discrimination under § 1981. *Wesley v. Gen. Drivers, Warehousemen and Helpers Local 745*, 660 F.3d 211, 213 (5th Cir. 2011).

This framework requires Plaintiff first "establish a *prima facie* case." *Id*. If accomplished, "the burden then shifts to [Local 891] to articulate a legitimate reason for the adverse employment action," and after providing such, "the burden then shifts back to [Plaintiff] to show that the reason is a pretext." *Id*. "This burden is one of production, not persuasion." *Hoang v. Microsemi Corp.*, No. 22-20004, 2023 WL 2346244, at *2 (5th Cir. March 3, 2023) (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 557 (5th Cir. 2007)). It is worth noting, "a plaintiff need not plead a prima facie case under" this framework at the pleading stage, "though it is sometimes helpful to

---

[3] "Direct evidence is evidence which, if believed, proves the fact of intentional discrimination without inference or presumption." *Johnson v. Iberia Med. Center Found.*, No. 23-30159, 2023 WL 7703872, at *3, n.5 (5th Cir. Nov. 15, 2023) (other citations and internal quotation marks omitted).

frame the analysis that way to determine whether a plaintiff has been discriminated against *because of* a protected characteristic." *Hamilton v. Dallas Cnty.*, 79 F.4th 494, 502 n.45 (5th Cir. 2023) (emphasis in original).

### 1. Title VII

For Title VII claims, the Fifth Circuit has "reworked" the traditional *prima facie McDonnell Douglas* test to better fit claims brought against unions, requiring plaintiffs show (1) they are members of a protected class; (2) "[they were] subjected to an adverse union action;" and (3) "[they were] treated less favorably by the union than employees of different races." *Wesley*, 660 F.3d at 214 (citing *Stalcup v. Commc'n Workers of Am.*, 44 F. App'x 654, 2002 WL 1397115, at *2 (5th Cir. June 13, 2002)); see also, *Tate v. United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Int'l & Serv. Workers Int'l Union Local 8363*, No. 21-30763, 2022 WL 1741624, at *1 (5th Cir. May 31, 2022). No dispute exists concerning the first element.

As for prong two, Plaintiff alleges Local 891 failed to investigate Plaintiff's claims of race discrimination, suggested Plaintiff disregard his race discrimination grievance, and withdrew Plaintiff's race discrimination complaint against UPS in October 2022 against his wishes. This is not an exhaustive list, but the Court lists these as the most persuasive. The Court finds these allegations sufficient to satisfy prong two of the *prima facie* case at this juncture. The only allegation Plaintiff makes in support of prong three regarding Local 891, however, is the union "failed to provide the certified letter of the [National Panel's October 19, 2022, hearing] results that it provided similarly-situated white colleagues" [1]. Plaintiff makes no mention of how this affected him in any way, and based on this Court's reading of his complaint, it had no impact. This allegation alone is simply not enough to satisfy prong three, and while Plaintiff need not plead a *prima facie* case at this juncture, he must plead "factual content that allows [this Court] to draw

8

the reasonable inference [Local 891] is liable for the misconduct alleged." *Hamilton*, 79 F.4th at 499 (quoting *Iqbal*, 556 U.S. at 662) (internal quotation marks omitted).

Plaintiff seemingly relies on *Stalcup v. Communication Workers of America*, 44 F. App'x 654, 2002 WL 1397115 (5th Cir. June 13, 2002)), but, after closer inspection, *E.E.O.C. v. Pipefitters Ass'n Local Union 597*, 334 F.3d 656 (7th Cir. 2003) is the actual case on which he relies to overcome the above standard.[4] Plaintiff essentially argues Local 891 "has decided as a matter of policy not to grieve complaints of discrimination by black members . . . because [UPS] is hostile to such complaints and [Local 891] fears that this hostility will make it harder for the union to succeed in its dealings with [UPS]." *Pipefitters*, 334 F.3d at 661 (citing *Goodman v. Lukens Steel Co.*, 482 U.S. 656, 668-69 (1987)). He further argues "it is a clear violation not only of [Title VII], but also of the union's duty of fair representation" if "a black worker asks the union to grieve a complaint, the union refuses, though if the worker were white the union would grieve his complaint." *Id*. Still, these arguments are unavailing because Plaintiff pleads no facts to create a reasonable inference Local 891 has ever failed to pursue a grievance of discrimination other than his own nor does he provide examples of the union pursuing grievances on behalf of other non-minority, employees. Accordingly, Plaintiff has failed to meet the prima facie case's third prong, which requires he provide evidence demonstrating he was "treated less favorably by the union than employees of different races." *Wesley*, 660 F.3d at 214. Plaintiff's failure to provide this Court with any comparator of another race warrants this claim's dismissal against Local 891.

### 2.  42 U.S.C. § 1981

In the context of § 1981, the Fifth Circuit utilizes the "reworked" Title VII *prima facie McDonnell Douglas* test to better fit claims brought against unions, but it adds a fourth element.

---

[4] Although unnecessary, the Court, in an abundance of caution addresses these arguments despite the cited authority having only persuasive rather than binding merit. At any rate, they do not change this action's outcome.

*Wesley*, 660 F.3d at 214. Specifically, plaintiffs must show (1) they are members of a protected class; (2) "[they were] subjected to an adverse union action;" (3) "[they were] treated less favorably by the union than employees of different races;" and (4) "because this claim is brought under § 1981, [they] must prove that this differential treatment arose from purposeful racial discrimination." *Id.*; see also, *Tate*, 2022 WL 1741624, at *1. The Supreme Court clarifies, under § 1981, plaintiffs bear "the burden of showing . . . race was a but-for cause of [the plaintiff's] injury;" that is, "but for the defendant's unlawful conduct, [the plaintiff's] alleged injury would not have occurred." *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 589 U.S. 327, 331-33 (2020). As described in the prior section, Plaintiff has failed plead any comparator of another race under prong three. Additionally, because Plaintiff fails to provide factual support of "differential treatment," he cannot show his treatment "arose from purposeful racial discrimination."[5] Therefore, this claim must also be dismissed.

### C. Retaliation

To properly assert a retaliation claim under § 1981 or Title VII, Plaintiff must show "(1) [he] engaged in activities protected by § 1981 [or Title VII]; (2) that an adverse action followed; and (3) a causal connection between the protected activities and the adverse action." *White Glove Staffing, Inc. v. Methodist Hosp. of Dallas*, 947 F.3d 301, 308 (5th Cir. 2020) (quoting *Body By Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017)) (internal quotation marks omitted).[6]

---

[5] Plaintiff would also fail for the same reasons under the more generalized § 1981 racial discrimination test which requires he establish: (1) he "is a member of racial minority;" (2) the defendant "had intent to discriminate on the basis of race;" and (3) "the discrimination concerned one or more of the activities in the statute." *Strong v. Bank of America Corp.*, No. 25-10199, 2025 WL 1795109, at *2 (5th Cir. June 30, 2025) (quoting *Hager v. Brinker Tex., Inc.*, 102 F.4th 692, 700 (5th Cir. 2024)) (internal quotation marks omitted).

[6] The test for retaliation is essentially the same under either Title VII or § 1981. See *Moye v. Tregre*, No. 22-30341, 2024 WL 65424, *3 (5th Cir. Jan. 5, 2024) (citing *Hudson v. Lincare, Inc.*, 58 F.4th 222, 231 (5th Cir. 2023)) ("To establish a prima facie case of retaliation, [Plaintiff] must show that (1) [he] engaged in conduct protected by

10

Plaintiff argues he engaged in protected activity "by complaining about discrimination and retaliation and/or opposing [Local 891's] unlawful employment practices on February 2, 2022, verbally to Walters and in his written grievance and three complaints of discrimination filed with the EEOC on January 23, 2023, November 27, 2023, and January 29, 2024." He then argues Local 891 took adverse actions against him by (a) "targeting Plaintiff for reprimand, suspension, and termination;" (b) "terminating Plaintiff after filing his race discrimination grievance;" (c) "withdrawing Plaintiff's complaint of race discrimination . . . against his wishes;" (d) "removing Plaintiff's access to health benefits;" and (e) "delaying Plaintiff's short term disability application" by approximately six months.

The Court acknowledges Plaintiff engaged in a protected activity by at least filing his last EEOC charge against Local 891. His arguments concerning prongs two and three, however, are unpersuasive. Firstly, it is not within a union's purview to decide whether one of its employee members should be reprimanded, suspended, or terminated; rather, it is the employer's. Nor, in this instance, at least, does Local 891 determine an individual's access to health benefits or short-term disability. Plaintiff essentially acknowledges this when he alleges "*UPS cancelled* [his] medical benefits from January 2023 through March 2023" [1]. This is also true of Plaintiff's short-term disability because he was told "*UPS* had not executed the paperwork," and while "a third-party administrator informed Plaintiff the denial was related to a coding issue with *either UPS* or Local 891," he fails to plausibly plead a causal connection between the denial of these benefits and his filing an EEOC charge against Local 891. For these reasons and others unenumerated, Plaintiff's § 1981 retaliation claim against Local 891 must be dismissed.

---

[T]itle VII; (2) [he] suffered a materially adverse action; and (3) a causal connection exists between the protected activity and the adverse action.").

11

### D. FMLA Discrimination and Retaliation

Finally, Plaintiff claims Local 891 violated his rights under the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601, *et seq.*; that is, Local 891 "unlawfully 'interfered with' and 'restrained' Plaintiff's FMLA rights by submitting false documents to ensure denial of his FMLA rights and ceasing Plaintiff's medical benefits . . . shortly after he exercised said rights" [1]. This argument is a nonstarter because as previously discussed, Local 891 is not the decisionmaker concerning an employee's FMLA leave or medical benefits, that is up to the employer. Therefore, Plaintiff cannot plausibly plead a FMLA rights violation against Local 891, warranting this claim's dismissal.

### IV. Conclusion

For all the foregoing reasons, the Court finds Defendant International Brotherhood of Teamsters Local 891's Motion to Dismiss [28] should be granted, and all claims against it should be dismissed.

An order in accordance with this opinion shall issue this day.

THIS, the, 20th day of November 2025.

_____
SENIOR U.S. DISTRICT JUDGE